FLORIDA PACKING AND ICE COMPANY, A CORPORATION, PLAINTIFF IN ERROR, v. EPHRIAM L. CARNEY, DEFENDANT IN ERROR.

LICENSE TAXES—DEALERS DEFINED—TAXES UNAUTHORIZEDLY COLLECTED MAY BE RECOVERED FROM TAX COLLECTOR—FRESH DISTINGUISHED FROM CURED MEATS.

1. Where a tax collector transcends his authority, and by the seizure, detention and threatened sale of property, forcibly and against the consent and protests of a party, collects from him a sum for taxes which such party was under no legal obligation to pay, and was in no way legally liable for or subject to, and which such officer had no legal authority to demand or collect from him, such party has the right to sue such officer individually for and to recover of him the sum with interest so wrongfully collected.

2. Under the provisions of the following section 16 of Chapter 5106 Laws of 1903: "That all wholesale dealers in fresh meats packed or refrigerated shall pay to the State a license tax of one hundred dollars in each county and for each place of business," the word "dealer" does not comprehend a person who merely *buys* a commodity in one form and converts it by his skill and labor into an entirely different commodity and then sells it; such, for example, as one who buys lumber with which he manufactures furniture or any other useful commodity that he sells, cannot be termed a "dealer in lumber." The true meaning of the word *"dealer,"* as it is used in this statute is one who habitually and constantly as a business deals in and *sells* any given commodity; and a *wholesale dealer* therein, comprehends one who *sells* in large or wholesale quantities as contradistinguished from one who sells in small lots at retail.

3. The tax imposed by section 16 of Chapter 5106 Laws of 1903, is upon the wholesale dealer in *"fresh"* meats only. Whether the same be either "packed or refrigerated" it must be, *at the time that he sells it* in the ordinary course of his business, in that state where it can properly be termed *"fresh meats,"* as contradistinguished from *cured* or *salted meats,* in order to render him liable to the occupational tax imposed by said section.

4. Meats technically known as *"cured,"* from having been treated with salt, smoke, &c., keep in an edible condition indefinitely even in the warmest latitudes, whereas the same meats when untreated and *fresh,* though capable of being kept in their *fresh* and natural condition for long periods in a low temperature either natural or artificial, quickly spoil, become putrid and unfit for food when subjected to high or even mean or ordinary temperatures. It is upon the wholesale dealer in the last described commodity that the said section 16 of Chapter 5106 of 1903 imposes the license tax, and not upon the dealer in *cured* or salted meats.

This case was decided by Division B.

Writ of Error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the Court.

*R. L. Anderson,* for Plaintiff in Error.

*R. A. Burford,* for Defendant in Error.

TAYLOR, J.   The plaintiff in error as plaintiff below sued the defendant in error in the Circuit Court of Marion county in an action of trespass on the case. The declaration alleged as follows: "Plaintiff sues the defendant for that the defendant on or about the 3rd day of September, 1904, being then the Tax Collector of Marion county, seized, levied upon and took into his custody and possession the following described personal property of the plaintiff, *viz*: one wagon, one black mule and one set of harness; that · said property was then needed and in actual use by the plaintiff in distributing and delivering ice to its customers in Ocala in said county; that said defendant seized and levied upon said property solely for the purpose of enforcing and compelling plaintiff to pay a license or occupational tax under the provisions of Section 16 Chapter 5106, Laws of Florida, which said defendant claimed and demanded that plaintiff should pay, and which the plaintiff refused to pay. Plaintiff further. says that it was not and never became liable to pay said license or occupational tax, and that it was not on said 3rd day of September, 1904, nor at any time prior thereto, a wholesome dealer in fresh meats packed or refrigerated, and that the attempted collection and enforcement of the same from the plaintiff was illegal and

without authority of law; that the plaintiff was on the 3rd day of September, 1904, and prior thereto had been, engaged in said Marion county in the business of purchasing fresh pork from farmers and stockraisers, all of which when so purchased was by the plaintiff placed in refrigerating rooms of its ice plant and cured and treated by being salted, pickled and smoked and converted into breakfast bacon, hams, shoulders and sides before selling the same, and that none of said meat was sold or disposed of at wholesale by plaintiff while it was in a fresh state, nor until after it had been so changed and converted into cured and salt meats as aforesaid. Plaintiff further says that the defendant seized and detained said property under said illegal and wrongful claim, and that in order to recover the use and possession of said property which plaintiff needed and required in order to conduct its business as aforesaid, the plaintiff was compelled to and did pay to said defendant on or about October, 1904, the sum of one hundred and fifty dollars, being amount of said tax so illegally demanded, and that the plaintiff was constrained by the demand and seizure of said property made and done by the defendant under said pretended legal authority to pay said sum of money to the defendant, and was compelled against its will and against its protest and objections to submit to said illegal demand in order to release its said property so illegally seized and detained by the defendant. Plaintiff says that defendant was without legal right or authority to seize, levy upon, or take its said property. That said sum of $150 was unlawfully and wrongfully collected, received and taken by the defendant from the plaintiff, and claims damages in the sum of $300."

This declaration was demurred to by the defendant

upon the following grounds: 1st. Because it fails to state a cause of action against this defendant.

2nd.   Because it appears from the allegations of the declaration that the  plaintiff was liable to  pay the license tax sought to be enforced.

· 3rd.   Because it appears from the allegations of said declaration that the plaintiff was a wholesale dealer in fresh meats, packed or refrigerated, within the meaning of section sixteen of Chapter 5106 Laws of Florida, and was liable to the payment of the license tax demanded by this defendant, and now sought to be recovered in this cause.

4th.   Because said declaration states a conclusion of law inconsistent with the facts given therein."

At the hearing the court below sustained this demurrer, and, the plaintiff declining to amend its declaration, rendered final judgment that the plaintiff take nothing by its plaint, that the defendant go hence without day and recover his costs, &c.   To have this judgment reviewed the plaintiff brings the case here by writ of error, and assigns as error the order sustaining the defendant's demurrer to its declaration, and the entry of final judgment.

The right of the plaintiff to sue for and recover from the defendant Tax Collector the amount of money alleged to have been forcibly collected from the plaintiff by him by seizure and detention of its  property, in the  event, from the interpretation of the statute under which the defendant acted, it be found that the plaintiff was not legally liable for the alleged tax so collected, is not questioned.   We do not think that there can be any serious doubt but that where an executive officer, such as a tax collector, transcends his authority and by the seizure,

detention and threatened sale of property, forcibly, and against the consent and protests of a party, collects a sum for taxes for which such party was under no legal obligation to pay, and was in no way legally liable for or subject to, and which such officer had no legal authority to demand or collect from him, that such party has the right to sue such officer individually for and recover of him the sum with interest so wrongfully collected. Webbs' Pollock on Torts, p. 141 *et seq;* American Bank v. Mumford, 4 R. I. 478; Eames v. Johnson, 4 Allen (Mass.) 382; Hubbard v. Kelley, 8 West Va. 46. The legality of the enforced collection of the alleged tax from the plaintiff by the defendant as Tax Collector depends, under the allegation of the declaration that are admitted by the demurrer, upon the correct interpretation of the following section 16 of Chapter 5106 Laws of 1903:

"That all wholesale dealers in fresh meats packed or refrigerated shall pay to the State a license tax of one hundred dollars in each county and for each place of business."

The word "dealer" as used in this statute does not comprehend a person who merely *buys* a commodity in one form and concerts it by his skill and labor into an entirely different commodity and then sells it; such, for example, as one buys lumber with which he manufactures furniture or any other useful commodity that he sells, cannot be termed a "dealer in lumber." The true meaning of the word "dealer," as it is used in this statute is one who habitually and constantly as a business deals in and *sells* any given commodity, and a *wholesale dealer* therein, comprehends one who *sells* in large or wholesale quantities as contradistinguished from one who sells in small lots at retail. Goodwin v. Clark, 65 Me. 280; Commonwealth v. Gormly, 173 Pa. St., 586, 34 Atl. Rep. 282;

O'Fall v. Bezeau, 37 Mich. 506. The tax imposed by the quoted section of the statute is upon the wholesale dealer in "fresh" meats only.        Whether the same be either "packed or refrigerated" it must be, *at the time that he sells it* in the ordinary course of his business, in that state where it can properly be termed *"fresh meat,"* as contradistinguished from *cured* or *salted* meats, in order to render him liable to the occupational tax here imposed. Meats technically known as *"cured,"* from having been treated with salt, smoke, &c., keep in an edible condition indefinitely even in the warmest latitude, whereas the same meats when untreated and *fresh,* though capable of being kept in their *fresh* and *natural* condition for long periods in a low temperature either natural or artificial, quickly spoil, become putrid and unfit for use when subjected to high or even mean or ordinary temperatures. It is upon the wholesale dealer in the last described commodity that the quoted section of the statute imposes the license tax, and not upon the dealer in *cured* or salted meats. Cross v. Seeberger, Collector, 30 Fed. Rep. 427. According to the allegations of the declaration in this case, that are all admitted to be true by the demurrer, the plaintiff was not a wholesale dealer in *fresh* meats within the meaning of this statute, and was not subject to or liable for the tax that it imposes upon such dealers, and the defendant as tax collector transcended his authority in its collection and enforcement against him, and the plaintiff has the right to recover it back from him as he seeks to do by this suit. No question is presented of immunity of the officer from liability here by reason of the existence of any warrant issued by some other official, body or tribunal under and in obedience to which he acted in the collection of this tax, since the

statute seems to leave the ascertainment of the fact as to who are liable to the license taxes it imposes entirely in the air, without any prior listing or assessment by any official or board. In general terms it prohibits, under penalties, the conduct of any of the occupations taxed, without having a license, which can be procured only by payment of the sum imposed as the tax on the given business. It then in general terms makes it the duty of the Tax Collector to enforce the payment of such tax by seizure and sale of property, leaving the fact as to who is subject to such tax to be ascertained by the collector in the best way that he can, and prescribes no warrant or other writ or process under which he shall act in making the required seizure and sale of property for its enforcement.

From what has been said it follows that the court below erred in sustaininig the demurrer of the defendant to the plaintiff's declaration. The judgment of the Circuit Court is, therefore, hereby reversed at the cost of the defendant in error, with directions to overrule the defendant's demurrer to the second count of the plaintiff's declaration.

HOCKER and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.