P. P. & L. Co., Appellant, *v.* P. S. C. et al.

Argued November 16, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank M. Hunter,* and with him *E. G. Hauff* and *S. R. Zimmerman,* for appellant.

*Roger J. Dever,* for United Mine Workers of America, intervening appellant.

*John H. Bigelow,* for Hazleton Chamber of Commerce, intervening appellant.

*G. T. Hambright,* and with him *John E. Malone,* for Pennsylvania Water & Power Company and Safe Harbor Water Power Corporation.

*Spencer G. Nauman,* for The Pennsylvania Railroad Company.

*Samuel Graff Miller,* and with him *Paul H. Rhoads,* Legal Assistants, *E. Everett Mather, Jr.,* Assistant Counsel, and *John Fox Weiss,* Counsel, for The Public Service Commission.

OPINION BY KELLER, J., March 16, 1934:

The applications, from which these appeals have their origin, were consolidated and heard together by the Public Service Commission. The appeals were argued together in this court. They may be disposed of in one opinion.

The record is rather long, but the questions raised by the appeals are within a narrow compass, viz., were

the respective orders of the commission appealed from unreasonable and not in conformity with law? Neither proceeding deals with the reasonableness of rates, hence the amendment of June 12, 1931, P. L. 530 to Art. VI, secs. 22 and 23, of the Public Service Company Law does not require us to determine, on our own independent judgment, after a consideration of the entire record before us, whether or not the findings made by the commission are reasonable and proper. On the contrary, the orders of the commission are prima facie evidence of the facts found and the burden of proving the contrary rests upon the appellants.

It is also an established principle in our practice on appeals from the Public Service Commission, that, as respects the rulings of the commission on purely administrative questions, we will not reverse unless the order of the commission appealed from is clearly unreasonable or not in conformity with law.

For convenience we shall hereafter refer to the appellee, Pennsylvania Water & Power Company as "Holtwood Company;" to the appellee, Safe Harbor Water Power Corporation as "Safe Harbor Company;" to the appellant, Pennsylvania Power & Light Company as "Pa. P. & L. Company;" and to the Consolidated Gas, Electric Light & Power Company of Baltimore, which, although not a party to this proceeding, nor before us on the record, appears frequently in the evidence, as "Baltimore Company."

Holtwood Company is a Pennsylvania corporation, chartered January 14, 1910, under the Act of April 27, 1909, P. L. 175, providing for the reorganization of corporations, and is a reorganization of the McCall Ferry Power Company, which was formed April 1, 1905 by the merger of the Hillside Water & Power Company and the Susquehanna Water & Power Company, both Pennsylvania corporations organized for

the purpose of the storage and transportation of water and water power for commercial and manufacturing purposes and the supply of the same to the public, with the right to use the same in the development of electric current and power, and the sale of such product. On September 24, 1927 it surrendered its charter power to store and transport *water,* retaining its rights as to *water power;* and shortly thereafter acquired by purchase all the franchises and property of the Holtwood Power Company, a Pennsylvania corporation organized for the purpose of manufacturing and supplying electricity for light, heat and power in a portion of Martic Township, Lancaster County. It maintains a large hydro-electric station at Holtwood, in said Martic Township, with a capacity of 111,000 kilowatts and also an auxiliary steam electric plant there, with a capacity of 20,000 kilowatts. It has no franchise to supply electricity to any towns or communities, but disposes of its current to a number of distributing companies; Baltimore Company taking all the current not otherwise sold. Holtwood Company's present application was to permit it to supply electric power and energy to the Pennsylvania Railroad Company in Manor Township, Lancaster County.

Safe Harbor Company is a Pennsylvania corporation chartered January 6, 1930, by the merger and consolidation of Safe Harbor Water Power Corporation and Chanceford Water Power Corporation, both incorporated February 19, 1929, for the supply, storage and transportation of water and water power for commercial and manufacturing purposes in Manor Township, Lancaster County, and Chanceford Township, York County. Its proposed charter of incorporation was approved by the commission on December 23, 1929, App. Docket 21579—1929; and a certificate of public convenience was issued by the commission on March 31, 1930, subject, inter alia, to the following

condition: "Second. That the Safe Harbor Water Power Corporation shall not, without the approval of the Public Service Commission hereafter first obtained, sell or dispose of the electric energy or power to be generated at its plant, at Safe Harbor, Lancaster County, Pennsylvania, to any customer other than the Consolidated Gas, Electric Light and Power Company, of Baltimore, Maryland, and the Pennsylvania Water and Power Company, of Holtwood, Pennsylvania, and to the latter company only for re-sale to present customers of said Pennsylvania Water and Power Company, viz: Edison Electric Company, of Lancaster, Pennsylvania; the Chester Valley Electric Company, of Coatesville, Pennsylvania, and the Consolidated Gas, Electric Light and Power Company, of Baltimore, Maryland" (17-a).

This condition was inserted in the order pursuant to the following stipulation entered into on March 19, 1930 between Safe Harbor Company and Edison Electric Company of Lancaster—of which Pa. P. & L. Company is the successor by merger,—which had protested against the issue of a general certificate of public convenience: "And now, March 19, 1930, it is hereby stipulated and agreed by and between the applicant in the above entitled proceeding and the Edison Electric Company, of Lancaster, Pennsylvania, corporations of the Commonwealth of Pennsylvania, by their counsel, that the applicant will not sell or dispose of the electric energy to be generated at its generating plant in any manner to permit such energy or electric power, without the approval of the Public Service Commission hereafter first had and obtained, to be delivered or used in the territory of the Edison Electric Company, directly or indirectly, without the consent of the said Edison Electric Company. Wherefore the said parties do hereby consent, agree and respectfully request that the commission embody in any order of

approval upon the said application the condition here-inafter set forth as a provision agreed to by the parties hereto, viz: 'And the approval hereby given is subject to the following condition and stipulation,' " following which appears the condition, just as inserted in the commission's order.

We construe this stipulation to mean, not that the Edison Electric Company of Lancaster had the absolute right of veto on Safe Harbor Company supplying electric current to the public, other than the customers named in the stipulation and order—which would be contrary to law—but that no sale or disposition of energy to be used or delivered within the territory of the Edison Company, should be made without its consent, unless approved by the Public Service Commission. The intent of the stipulation is revealed in the order which was incorporated within it as its effect and interpretation, and which the commission adopted. The commission neither did, nor legally could, delegate to the Edison Company its authority to pass upon the necessity or desirability of enlarging a public service company's service to the public. Safe Harbor Company maintains a large hydro-electric station at Safe Harbor, generating 168,000 kilowatts, and capable of being increased to 324,000 kilowatts; but has no auxiliary steam plant. Safe Harbor Company's present application is to modify the order of March 31, 1930, so that the condition above quoted be changed to read: "Second. That the Safe Harbor Water Power Corporation shall not, without the approval of the Public Service Commission hereafter first obtained, sell or dispose of the electric energy or power to be generated at its plant at Safe Harbor, Lancaster County, Pennsylvania, to any customer other than: (1) Consolidated Gas, Electric Light and Power Company of Baltimore, Maryland, (2) Pennsylvania Power & Light Company, (3) Pennsylvania

Railroad Company, (4) Chester Valley Electric Company of Coatesville, Pennsylvania, (5) Edison Light and Power Company of York, Pennsylvania, (6) Metropolitan Edison Company, (7) Philadelphia Electric Company, and (8) Pennsylvania Water & Power Company of Holtwood, Pennsylvania, and to the latter company only for resale to the other companies enumerated herein.''

The purposes of the applications were (A) to permit Holtwood Company and Safe Harbor Company, respectively, to supply electric power and energy in Manor Township, Lancaster County, to the Pennsylvania Railroad Company for the electrification of its lines, (1) from the Susquehanna River to Washington, D. C., on the Philadelphia, Baltimore and Washington Division, which is now being electrified; (2) on the Main Line from Philadelphia to Harrisburg, which is electrified as far west as Paoli, and the completion of which to Harrisburg is under consideration; (3) on the Columbia and Port Deposit Division from Columbia, Pa., to Perryville, Md.; and (4) on the Atglen and Susquehanna Branch, known as the Low Grade Freight Line—the electrification of the last two projects being also under consideration by the railroad company; (B) to permit Safe Harbor Company to sell electric power and energy directly to the following companies, which are already connected with Holtwood Company, and through it using Safe Harbor Company's electric current, viz., Pa. P. & L. Company, successor to the Edison Electric Company of Lancaster; Chester Valley Electric Company of Coatesville; Edison Light & Power Company of York; and to two additional new customers, (1) Metropolitan Edison Company, which already has a connection with Holtwood Company near York, and (2) Philadelphia Electric Company, which, with its subsidiaries, supplies electric current to the Pennsylvania Railroad

Company for its electrified Main Line, from New York to Philadelphia, and Paoli, and from Philadelphia to Wilmington, and with which interconnection is deemed probable and desirable.

The appellant, Pa. P. & L. Company, protestant before the commission, was formed June 4, 1920 by the consolidation and merger of a large number of gas and electric companies in the counties of Lehigh, Luzerne, Carbon, Monroe, Montour, Columbia, Snyder, Union, Northampton, Northumberland, Schuylkill and Bucks. It acquired additional electric companies doing business, inter alia, at Wilkes-Barre, Williamsport, Lock Haven, Harrisburg, Carlisle, Hummelstown, Pine Grove and Pottsville. But its interest as a protestant in these proceedings arises from the fact that in 1926 it acquired the Edison Electric Company of Lancaster, with which it was merged in 1930. Edison Electric Company of Lancaster, which we shall hereafter call Edison Company, by purchase, merger or consolidation had previously secured the right to furnish electric light, heat and power to the public, etc., in Manor and Martic Townships, respectively, Lancaster County. It had no generating plant in either township, except a small hydro-electric plant on Conestoga Creek in Manor Township, which has a capacity of 825 kilowatts. Starting in 1913 Edison Company began to obtain most of its electric power needed to supply the public in its territory—practically the whole of Lancaster County—from Holtwood Company's hydro-electric plant and in 1919 it discontinued the use of its steam electric generating plant at Lancaster. Since then ninety-nine per cent of its electric power has come from Holtwood Company, representing energy generated by the hydro-electric plants at Holtwood and Safe Harbor, and in periods of low water from Holtwood Company's steam plant and Baltimore Company's steam plant, which is hooked up

to supplement the hydro-electric plants in periods of extreme low water. The territory served by the Metropolitan Edison Company lies to the north and east of the Edison Company, separating it from the rest of Pa. P. & L. Company's territory. Pa. P. & L. Company has large steam generating plants, among others, at Stanton, near Pittston (Luzerne Co.); Harwood, Hauto and .Allentown, and a hydro-electric plant at Wallenpaupack in Northeastern Pennsylvania, with a combined capacity of 365,000 kilowatts and interconnections with other companies, some outside the state, which make 263,000 kilowatts more available. The steam plant at Harrisburg acquired with the Harrisburg Light & Power Company is not large enough to take care of the Harrisburg load and must be supplemented by energy from other generating plants.

A number of individuals, municipalities and organizations, including the United Mine Workers of America and Hazleton Chamber of Commerce, were allowed to intervene as protestants against permitting the Pennsylvania Railroad Company to secure the electric energy needed for the proposed electrification of its lines, as aforesaid, from the two applicant hydro-electric companies, rather than from Pa. P. & L. Company, on the ground that such action would (1) injuriously affect the securities of the Pa. P. & L. Company held in those localities and (2) be detrimental to the anthracite mining industry in which they are vitally concerned.

The commission, after extended hearing and full consideration, issued orders granting the certificates of public convenience as prayed for. Pa. P. & L. Company has appealed and United Mine Workers of America and Hazleton Chamber of Commerce have been granted permission to intervene as appellants.

We have carefully reviewed the evidence in the light

of the principles laid down at the outset of this opinion as applicable to the matters involved and find nothing to warrant us in holding that the orders of the commission were unreasonable or not in conformity with law or to require us to interfere with the judgment of the commission as expressed in the administrative rulings involved. The report of the commission justifies the orders appealed from. The evidence of John A. Walls, vice-president and general manager of Holtwood Company and Safe Harbor Company, E. R. Hill, consulting engineer of Pennsylvania Railroad Company, and Ralph L. Thomas, assistant general superintendent of Holtwood Company and project engineer of Safe Harbor Company, in conjunction with applicants' exhibit No. 6, (Record 328-a), is sufficient to sustain the findings of the commission, and the orders based thereon are not unreasonable or contrary to law. This evidence shows that Pennsylvania Railroad Company has embarked on a program of electrification of its lines, affecting five states and the District of Columbia, and extending into Pennsylvania as far as Harrisburg. It has chosen, as part of its plan of electrification, to use 25-cycle, single phase electric energy of very high voltage (132,000 volts) which can be transmitted economically and efficiently over long distances from few widely separated supply points. Its main line is now being operated electrically from New York to Philadelphia and Paoli, and its Philadelphia, Baltimore and Washington line from Philadelphia to Wilmington, with electric energy of the same nature and kind furnished by Philadelphia Electric Company and its subsidiaries, and generated at the hydro-electric plant of Philadelphia Electric Power Company at Conowingo, Md., with auxiliary power generated at Philadelphia Electric Company's steam plants. The Pennsylvania Railroad Company is now pushing the electrification of its lines from Wilmington to Wash-

ington and has entered into a contract with Baltimore Company, Holtwood Company and Safe Harbor Company, jointly, subject to the approval of the respective regulatory authorities of Pennsylvania, Maryland and the United States, which provides for the installation in Safe Harbor Company's plant of additional generators (generating single phase 25 cycle energy) (156,000 kilowatts) capable of supplying the electric power needed for the line when completed to Washington and for the main line when electrified from Paoli to Harrisburg, and also for the Columbia and Port Deposit branch and the Atglen and Susquehanna low grade line as needed; with auxiliary power from Baltimore Company's steam plant and the plants of Holtwood Company, converted from three phase, 60-cycle energy —which is the energy usually employed commercially —into single phase, 25-cycle energy. The railroad company is satisfied that the plan adopted to obtain its electric power from the three electric companies is the most advantageous and economical one available. Its Philadelphia, Baltimore and Washington line goes directly by Baltimore Company's steam plant, and the lines of the Columbia and Port Deposit branch and Atglen and Susquehanna low grade branch pass directly by Safe Harbor Company's plant, and Holtwood Company's plant is on the Columbia and Port Deposit line and only six miles from Atglen and Susquehanna line. The transmission lines from Safe Harbor and Holtwood to Baltimore Company's plant and distribution lines are already constructed and the necessary additions and hook ups can be made at a minimum of expense. The commission determined that it was to the public interest to permit the railroad company, which required vast quantities of electric power in the operation of its lines to be electrified as far as Harrisburg, to purchase it from hydro-electric companies immediately adjacent to the territory

to be served rather than from sources considerably removed in distance, requiring the expense of securing and building new transmission lines, and all of whose power would have to be converted from three phase, 60-cycle energy into single phase, 25-cycle energy at a loss of from ten to twelve per cent. The testimony is undisputed that Safe Harbor Company's plant is practically the load center of the railroad company's proposed electrification.

Appellant presents two main contentions—the others need not be considered in detail. It claims (1) that the supply of electric power to be used by the Pennsylvania Railroad Company in the proposed further electrification of its lines in Pennsylvania as far as Harrisburg, is within its territory and that its rights therein should be protected by the commission; (2) that the proposed contract between the railroad company on the one hand and the three electric companies on the other is in contravention of law as constituting a doing of business in Pennsylvania by Baltimore Company without the approval of the Public Service Commission.

(1) As we have already stated Pa. P. & L. Company's rights, as a protestant, arise wholly out of the charter rights of Edison Company which it absorbed. Those rights were not exclusive. It is within the sound discretion of the commission to permit competition: Hoffman v. P. S. C., 99 Pa. Superior Ct. 417, 429. But the orders appealed from do not authorize Safe Harbor Company to compete generally in Edison Company's territory, but only to supply a new and special class customer that Pa. P. & L. Company as successor of the Edison Company could not presently supply. Pa. P. & L. Company does not have a present sufficient plant capacity, either within or without the Edison Company territory, to supply the service required. The only steam plant

of any size within Edison Company's field—that in Lancaster—discontinued operations in 1919 and if started up again would fall far short of the requirements of the railroad. It is not proposed to start it. Practically the entire supply of electric energy used by Pa. P. & L. Company in Lancaster County, including Manor and Martic Townships, the fields in question, is received from the hydro-electric applicant companies, and under the contract of 1923, in force between Holtwood Company and Edison Company when the hearing before the commission was held, the latter was expressly debarred from using any of the current furnished thereunder for railroad electrification. The language of that contract is not ambiguous and is too clearly expressed to permit of parol explanation. Appellant admitted its inability to supply the electric power needed by the railroad in Maryland and the District of Columbia and disclaimed any "objections to this contract in so far as it involves a supply of energy for the electrification of the railroad from the Susquehanna River to Washington. We are protesting against the sale of electric energy so far as Pennsylvania operation is concerned" (53-a). As we shall point out under the second head, the approval of the 'contract' was not the matter before the commission; it was the propriety of the issuing of a certificate of public convenience authorizing the Safe Harbor Company and Holtwood Company to sell electric power to the railroad company. The grant of this certificate will not take away any customers now possessed by the Edison Company or its successor, and turn them over to Safe Harbor Company. It is a new and special class of service, of such volume and magnitude as to amount to 'wholesale,' within the definition of the Supreme Court in Com. v. Bay State Milling Co., 312 Pa. 28, 29, 167 A. 307, as well as the dictionaries, which neither Edison Company nor

its successor, Pa. P. & L. Company, is capable of supplying without building a new generating plant at Sunbury and transmitting the energy eighty miles to Safe Harbor; or without itself obtaining the supply, or a considerable part of it, from the hydro-electric plants at Holtwood and Safe Harbor and reselling it to the railroad. Appellant's general manager admitted it was entirely possible, if they got the contract to supply the railroad company "that we would contract with the Safe Harbor Company for some of its power" (131-a). There is no assurance in the record that if these hydro-electric companies had not been granted authority to sell energy to the railroad company, this appellant would have received the contract. The suggestion of its general manager that the contract would affect its commercial business with the railroad company at fifty-nine delivery points in and around Harrisburg and fifty points around Lancaster with a loss of 1879 kilowatts is not convincing. The use of single phase, 25-cycle energy in transporting trains would have to be converted into three phase, 60-cycle energy for commercial use, and we are not convinced that it would prove economical in that quantity for distribution to so many points. The question before the commission was clearly one of administrative discretion and the evidence produced on behalf of the applicants was sufficient to sustain the commission's ruling.

(2) Throughout the hearing the protestant presented its case as if the point at issue was the approval of the contract between the Pennsylvania Railroad and Baltimore Company, Holtwood Company and Safe Harbor Company, which was not the case. The issuance of these certificates of public convenience does not constitute an approval of that contract. All of the parties to it were not parties to this proceeding and they were not all before the commission.

Until the question is raised in a proper proceeding with all the contracting parties made parties to the proceeding, no valid pronouncement could be made as to the legality or illegality of the contract. The section of the Public Service Company Law relied on by appellant was added by the amendment of May 12, 1925, P. L. 588, to the definition of the term 'public service company' as it was given in the second paragraph of Art. I, sec. 1, as follows: "Provided, however, Persons and corporations of any of the above classes which do not furnish service within this State but whose rates, charges, facilities or service affect the rates, charges, facilities, or service of a public service company furnishing service within this State, shall be considered as doing business within this State, for the purpose of this act; And provided further, That the provisions of this act shall not be so construed as to extend to any matter or thing excluded under the Federal Constitution or act of Congress of the United States." The first proviso was expressly modified by the second so as not to attempt to extend to the commission any matter or thing excluded under the Federal Constitution or Act of Congress. We are not now called upon to decide whether the participation of the Baltimore Company in the contract by the furnishing of steam generated electric power to the railroad company in Pennsylvania, in times of low water, constitutes interstate commerce or not. If it does, it would not be subject to regulation by the Public Service Commission of this State (Smith v. Illinois Bell Tel. Co., 282 U. S. 133, 148), nor constitute an illegal doing of business in the State, if done without a certificate of public convenience. We agree with the commission that that question is not properly raised at this time in this proceeding. When raised in a proceeding in which all persons interested are parties on the record we shall

consider it if it comes before us. But the right of these applicant companies to sell electric power to the Pennsylvania Railroad Company for use on its electrified lines may exist even though the present contract be found to be illegal. The appellant's own position in the matter is, however, somewhat anomalous, for it was developed at the argument that the clause in the contract complained against is similar to a clause in the contract between Edison Company and Holtwood Company under which electric power was being furnished Pa. P. & L. Company at the time of hearing, and under which electric power is furnished to Edison Company from Baltimore Company's steam generating plant at times of very low water, and a method of fixing the cost thereof is provided approximating that used in the railroad contract—the chief difference being that the railroad company contracted to receive, use and pay for current delivered by Baltimore Company in Maryland, which was certainly legal, while no such delivery in Maryland was contemplated in the Edison Company contract. Otherwise the difference was largely one of amount—not principle; and appellant contemplated continuance of that use if it secured the railroad electrification contract and was allowed to use hydro-electric power from Holtwood and Safe Harbor.

As respects the intervening appellants, who appeared as favoring the claim of Pa. P. & L. Co. to supply the electric power needed by the railroad, the report of the commission shows that it gave their statements—they offered no evidence—careful consideration, and we find nothing in the report and order, in this respect, unreasonable or not in conformity with law.

As before pointed out, Pa. P. & L. Company's rights as a protestant rest solely on the rights of the Edison Company to furnish power and energy in Manor and

Martic Townships, Lancaster County. The Edison Company's territory is far from the anthracite coal fields and there is no evidence that it at any time generated electric power from anthracite coal. After 1919 it generated no energy at all by steam, and obtained ninety-nine per cent of all its energy from the hydro-electric plants of the intervening appellees. No *loss* of anthracite coal production results from the order of the commission. If the railroad company had contracted with Pa. P. & L. Company for the electric energy needed to electrify the line from Paoli to Harrisburg, the latter might have used anthracite coal to generate it—but only *might have,* for Pa. P. & L. Company, if it had secured the contract from Pennsylvania Railroad Company, which is conjectural, might have, with the consent of Holtwood Company, used hydro-electric power generated at Holtwood and Safe Harbor instead. Great as is the interest of the Commonwealth in the promotion and encouragement of the anthracite coal industry, it cannot lawfully, on that account, discriminate against a hydro-electric plant built with its sanction at a cost of many millions of dollars which asks for authority to complete its equipment and use the product within its natural field.

The other matters included in the certificate of public convenience granted to the Safe Harbor Company do not need extended discussion. The report of the commission fully justified the order. Authority to sell electric energy generated at Safe Harbor to Metropolitan Edison Company and Philadelphia Electric Company permits Safe Harbor Company to utilize the full capacity of its plant and dispose of what is known as the 'off peak surplus hydro energy' (or 'dump power', as it is sometimes called), which can be generated during periods of substantial river flow at small cost by discharging through the turbines water which would otherwise be wasted over the dam. The

amount that could be saved in this way—whether it amounts to $1,900 a week, as estimated by the applicant, or $1,000 a week, as calculated by the protestant—is a consideration worth while, and the allowance can do the protestant no injury.

The evidence also showed that permission to sell direct to consumers for the Safe Harbor Company's energy, who are now supplied indirectly through Holtwood Company, would result in simplification of contractual relations and intercompany accounting and would avoid cumulative taxation, which, under the decision in Com. v. Phila. Electric Co., 312 Pa. 528, 168 A. 318, would be imposed twice instead of only once unless the sales were permitted to be made direct.

These considerations, as well as the advantage to the public interest for the two hydro-electric companies to be in a position to make joint contracts with and supplement service to the *permitted customers*, moved the commission to grant its certificate of public convenience. They are of sufficient weight to sustain the order. The record is barren of any evidence that would support a finding that the order is unreasonable or not in conformity with law.

The appeals are dismissed and the orders of the commission severally affirmed.

President Judge Trexler did not sit in the argument of this case and took no part in its consideration or decision.