8 So.2d 578

**ADAMS et al. v. CURRY, Commissioner of Revenue, et al.**

3 Div. 374.

Supreme Court of Alabama.

June 11, 1942.

Hill, Hill, Whiting & Rives, of Montgomery, for appellants.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellees.

BROWN, Justice.

The appellants own and operate a sawmill in Bullock County, located in a rural section, with a cutting capacity of 5,000 feet of lumber per day. For the privilege of operating said mill they have procured a license, and paid the privilege tax levied by § 585 of the Code of 1940, Title 51. To quote from the stipulation of facts on which the case was tried: "At complainant's plant in Midway, Alabama, complainant has a planing mill, which said planing mill is used for dressing and edging lumber cut at the sawmill belonging to complainant, and for dressing and edging lumber bought by complainant that is cut by sawmills other than those owned or operated by complainants. Complainants dry, trim and dress the rough lumber in their yard at Midway in accordance with the demands of the trade. Complainants sell said lumber after it has been dried, trimmed and dressed, at wholesale to wholesale dealers, and at retail, from their lumber yard at Midway and occasionally sell at retail small quantities of rough lumber that has been dried and assorted according to grade from its said yard at Midway; said retail sales not exceeding 1% of the total sales; that no rough lumber whatsoever has been sold, is being sold or will be sold by complainant from said yard or elsewhere at wholesale. Complainants cut an average of not exceeding 5,000 feet of rough lumber per day with their sawmill. Complainants buy, deliver at their sawmill in Midway, an average of twenty-five thousand feet of rough lumber per day which said lumber is cut by sawmills other than those owned or operated by the complainants. Complainants sell at wholesale to the wholesale dealers, from their said mill at Midway, an average of thirty thousand feet of lumber per day, constituting an annual sale of approximately nine million feet. No sales are made by complainants of lumber except from their said mill at Midway."

In these circumstances, appellants insist that they have the right under the minimum sawmill operator's license tax to dispose of the output of said planing and finishing plant and lumber yard, at wholesale and retail without liability for the wholesalers and jobbers privilege tax imposed by § 546, Code of 1940, Title 51.

The circuit court was of a different opinion and so ruled, hence this appeal.

Appellants' contentions are, first, to require them to procure a wholesaler's license and pay therefor, would amount to double taxation. And second, that the legislative intent manifested by the provisos attached to §§ 547, 585, and 614 of the same title, evidences a legislative intent to exact but one privilege or license tax, from persons engaged in the lumber business, whether it be as wholesaler, lumber yard operator, sawmiller or the operation of a veneer or planing mill.

In levying a privilege or license tax as to trades, businesses or occupations, the legislature may not discriminate between members of the same class, and the tax must not be so exorbitant as to prohibit or unreasonably restrain or oppress legitimate and useful trades, businesses or occupations, that are not productive of disorder or injurious to the public. In applying the tax the classification or reclassification cannot be arbitrary, fanciful or capricious, but must have a substantial basis as distinguished from a mere fictitious or fanciful basis. Aside from these restrictions, the legislative power is unrestrained. Republic Iron & Steel Co. v. State, 204 Ala. 469, 86 So. 65, 69; State v. Downs, 240 Ala. 74, 197 So. 382.

In the case first above cited it was held that a corporation engaged in the general business of operating furnaces in the manufacture of iron in connection with which it had procured a license and paid the tax exacted therefor, and also operating a mine from which it mined coal for use in its manufacturing business, and for sale, could be subjected to a license tax measured by the tonnage secured. The reasoning in that case is applicable here, it is: "This appellant also questions the applicability of the act as to its business, in that it only

92

markets or sells a small portion of the coal it mines, and that the operation of its mines, coal and iron ore, is but an adjunct or component part of its general business of operating its furnaces for the manufacture of iron. This may be true, and mining be a subsidiary of its general business; but the act is not limited to those who mine coal and iron ore only for sale upon the market, but applies to those engaged in the business of mining for profit, as distinguishcd from a personal or domestic use. Words and Phrases, Second Series, vol. 1, p. 531. Nor are we of the opinion that appellant's business of mining is such an inseparable and integral part of the general business of manufacturing iron as to exclude it as a coal or iron ore operator by virtue of a license as a manufacturer of iron. The business of manufacturing iron and operating furnaces does not necessarily include the business of operating coal and iron ore mines; the product is, of course, so used, but the manufacturer of iron can purchase coal and iron ore, and is not compelled to operate mines in order to manufacture iron, and if he prefers to mine it he thereby becomes a miner, and engaged in the separate and distinct business of mining, notwithstanding his chief object in doing so may be to supply material to be used in the business of manufacturing iron. It could as well be contended that a shoe manufacturer would not have to pay license on operating a tannery, if the leather was principally or entirely used in the shoe factory. [City of] Mobile v. Craft [& Co.], 94 Ala. 156, 10 So. 534; [City of] Mobile v. Richards, 98 Ala. 594, 12 So. 793, explained and reaffirmed in the case of [City of] Tuscaloosa v. Holczstein, 134 Ala. 636, 32 So. 1007."

So here the buying, dressing, finishing and selling finished lumber at wholesale is not an inseparable or integral part of operating a sawmill, and such activity furnishes a reasonable basis for classification or reclassification for the exaction of an occupation tax from wholesalers of lumber, on principles stated above.

There is no assertion or claim that appellants have paid the tax levied by § 547, Title 51, Code of 1940, hence the proviso of said section relating only to retailers is not applicable.

Nor is there any claim of the payment of the tax exacted by § 614, Title 51. Hence that section is without influence.

We therefore concur in the conclusion expressed in the decree of the circuit court.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.