55 So.2d 843

**STATE v. PURE OIL CO.**

**6 Div. 86.**

Supreme Court of Alabama.

March 8, 1951.

Rehearing Denied June 28, 1951.

Further Rehearing Denied Jan. 10, 1952.

Lange, Simpson, Robinson & Somerville and Reid B. Barnes, of Birmingham, and Vinson Elkins & Weems, Houston, Tex. and Allen C. Hutcheson, Jr., of Chicago, Ill., for appellee.

A. A. Carmichael, Atty. Gen., and Wm. H. Burton, Jr., Asst. Atty. Gen., for appellant.

BROWN, Justice.

The statute, § 634, Title 51, Code of 1940, levies a privilege tax on "Each person, firm, corporation, or agency selling illuminating, lubricating, or fuel oils at wholesale, that is to say in quantities of twenty-five gallons or more," in the amount of one-half of one percent "on his gross sales for the preceding fiscal year," and provides that such payment shall be made "within two weeks from the beginning of the fiscal year" to the state department of revenue. Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861, 148 A.L.R. 260; State v. Anglo-Chilean Nitrate Sales Corp., 225 Ala. 141, 142 So. 87.

Said department on December 20th, 1948, ascertained and fixed the amount of said tax to be paid by the appellee taxpayer to be $15,396.19, to which the taxpayer protested and said protest being overruled the assessment was made final from which the taxpayer appealed to the circuit court, in equity, and filed its bill challenging the validity of said assessment on the ground that said section of the code contravenes the Constitution of the State and of the United States, in that it denies to the taxpayer equal protection of the law under the Fourteenth Amendment of the Constitution and that the classification set up in the statute is arbitrary and unreasonable and levies said tax in an unequal and discriminatory manner as to persons in the same classification or business.

The bill further alleges in support of said stated contentions that the taxpayer "is engaged in the business of selling, within the State of Alabama, petroleum, products, including illuminating, lubricating and fuel oils. Said products are sold to two general classes of customers. One such class is persons who purchase the same for resale, commonly termed wholesale sales. The other class is persons who purchase the same for their own use and not for resale either in the same form or as a component part of a manufactured product, commonly termed retail sales. The types of products and customers dealt with by Taxpayer are similar to those of other oil companies doing business in the State of Alabama. During the period in question in this proceeding, namely October 1, 1945 to September 30, 1946, Taxpayer made sales to purchasers for resale in the State of Alabama totaling $875,457.85, of which sales $350,464.16 were sales in quantities of less than twenty-five gallons and $524,993.-69 were sales in quantities of twenty-five gallons or more. During said period Taxpayer made sales to purchasers for their own use and not for resale totaling $1,-884,004.80, of which sales $67,939.25 were sales in quantities of less than twenty-five gallons and $1,816,065.55 were sales in quantities of twenty-five gallons or more. The assessment above referred to is levied on all such sales regardless of the type of purchaser involved and regardless of whether such sales were in quantities of more or less than twenty-five gallons, although said Section expressly exempts from the tax sales in quantities of less than

twenty-five gallons. The said assessment is based on total sales during the period in question, both under and over twenty-five gallons, of $2,763,108.00, and the taxpayer does not deny that its total sales amounted to such figure. The breakdown of figures, above made and hereafter made, is based on an audit of invoices for the period totaling $2,759,462.65. The discrepancy amounting to $3,645.35 arises from invoices which have been lost or mislaid so that same could not be analyzed and segregated, and in the event the tax in question is upheld in whole or in part, Taxpayer will be willing that the amount of this discrepancy be included in taxable sales.

"The determining factor in whether the products here involved are sold in quantities of more or less than twenty-five gallons is one of chance and the nature of the product rather than any classification of the business involved.

"Lubricating oils are sold principally to customers who purchase for resale. When sold for resale, the sales are principally in quantities under twenty-five gallons. When lubricating oils are sold for the customer's own use, the sales are principally in quantities over twenty-five gallons. Lubricating oils are sold to customers who purchase for resale; are largely sold in one quart cans, purchased in case lots of twenty-four quarts or six gallons. It is entirely a matter of chance whether such a customer orders more than four cases at once or makes successive purchases of four cases or less; therefore, the imposition of the tax on such sales depends on chance and a method of doing business. Customers who purchase lubricating oils from Taxpayer at retail for their own use, do so largely in drums containing more than twenty-five gallons. During the period here in question Taxpayer made sales of lubricating oils to customers for resale totaling $446,065.00, of which sales $288,569.32 were in quantities of less than twenty-five gallons and $157,495.68 were in quantities of twenty-five gallons or more. Sales of lubricating oils to customers for their own use during the same period totaled $195,274.83, of which sales $44,554.22 were in quantities

of less than twenty-five gallons and $150,720.61 were in quantities of twenty-five gallons or more.

"Fuel oil is sold by Taxpayer largely to customers who purchase the same for their own use for heating or power. The nature of the use and the product is such that such sales are almost entirely in quantities of more than twenty-five gallons. During the period in question Taxpayer's sales of fuel oil to purchasers for resale totaled only $117,407.85, of which $51.48 were sales in quantities of less than twenty-five gallons and $117,356.37 were in quantities of twenty-five gallons or more. On the other hand, during this period Taxpayer's sales of fuel oil to customers for their own use totaled $1,585,348.94, of which sales $503.00 were in quantities of twenty-five gallons or less and $1,584,845.94 were in quantities of twenty-five gallons or more. All such sales to customers for their own use were subjected to the Retail Sales Tax of Alabama and such taxes were paid thereon.

"Greases, like lubricating oils, are sold by Taxpayer both in small lots and in bulk, the size of the purchase depending largely on chance. During the period in question Taxpayer made sales of greases to customers for resale totaling $67,166.12, of which $47,659.05 were in quantities of less than twenty-five gallons and $19,507.07 were in quantities of twenty-five gallons or more. During the same period Taxpayer's sales of greases to ultimate consumers totaled $70,996.14, of which sales $21,546.70 were in quantities of less than twenty-five gallons and $49,449.44 were in quantities of twenty-five gallons or more.

"Kerosene, being principally a domestic illuminating oil, is sold largely by Taxpayer to purchasers who purchase for resale and in quantities of more than twenty-five gallons. During the period in question Taxpayer made sales of kerosene to purchasers for resale totaling $244,818.88, of which $14,184.31 were in quantities of less than twenty-five gallons and $230,634.57 were in quantities of twenty-five gallons or more. During the same period Taxpayer's sales of kerosene to consumers for their own use totaled only $32,384.89, of which sales

$1,335.33 were in quantities of less than twenty-five gallons and $31,049.56 were in quantities of twenty-five gallons or more. * * *"

The bill prays in short that the ascertainment of the amount of the tax should be voided in toto or limited to such oils sold in quantities of twenty-five gallons or more.

In the course of the proceedings in the circuit court the original bill was finally abandoned and a substituted bill filed to which the state demurred on the grounds that the bill was wanting in equity and numerous other specific grounds addressed to said substituted bill. The court overruled the demurrer and the state has appealed.

The appellee renewed the contentions stated in said substituted bill but the state contends that said statute is a valid exercise of legislative power under both the Constitution of Alabama and the Fourteenth Amendment of the Federal Constitution and that the levy is sound. The appellee's objection to the levy assumes that the tax imposed by said statute is a tax on the sales of fuel oils. That assumption is not true. As stated at the outset of this opinion the tax is a privilege tax and not a sales tax.

It has been repeatedly held that "In levying a privilege or license tax as to trades, businesses or occupations, the legislature may not discriminate between members of the same class, and the tax must not be so exorbitant as to prohibit or unreasonably restrain or oppress legitimate and useful trades, businesses or occupations, that are not productive of disorder or injurious to the public. In applying the tax the classification or reclassification cannot be arbitrary, fanciful or capricious, but must have a substantial basis as distinguished from a mere fictitious or fanciful basis. Aside from these restrictions, the legislative power is unrestrained. Republic Iron & Steel Co. v. State, 204 Ala. 469, 86 So. 65, 69; State v. Downs, 240 Ala. 74, 197 So. 382." Adams v. Curry, 243 Ala. 90, 8 So.2d 578, 579.

"Tests for the determination of the operation or administration of a law or ordinance as to a classification contained therein within the Constitutions, state and federal, are that the class (1) must be germane to the purpose of the law; (2) must bring within its influence all who are under the same conditions and apply equally to each person or member of the class, or each person or member who may become one of such class; (3) must not be so restricted and made to rest upon existing circumstances only as not to include proper additions to the number included within the class; (4) must be based on substantial distinctions which make one class different from another; and (5) must be reasonable under the facts of the case, and not oppressive and prohibitive. Gamble v. City Council of Montgomery, 147 Ala. 682, 39 So. 353; Republic I[ron] & S[teel] Co. v. State, 204 Ala. 469, 86 So. 65; [Consolidated Coal Co. of] St. Louis v. [People of State of] Illinois, 185 U.S. 203, 22 S.Ct. 616, 46 L.Ed. 872; State v. W[estern] U[nion] T[el.] Co., 208 Ala. 228, 94 So. 466. This is necessary to secure uniformity in the operation, administration, and proper distribution of the burden of government. Ex parte Smith, 212 Ala. 262, 102 So. 122; Republic I. & S. Co. v. State, 204 Ala. 469, 86 So. 65." Woco Pop Co. of Montgomery v. City of Montgomery, 213 Ala. 452, 105 So. 214, 218.

Statutory discrimination between classes must be presumed to be relevant to a permissible legislative purpose and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it. Asbury Hospital v. Cass County, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679; Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245; State ex rel. Woodward v. Skeggs, 154 Ala. 249, 46 So. 268; State ex rel. Austin v. Black, 224 Ala. 200, 139 So. 431; Jefferson County v. Busby, 226 Ala. 293, 148 So. 411.

As pointed out in Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 872,

81 L.Ed. 1245, "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

The court in the Carmichael case, supra, further observed: "Distinctions in degree, stated in terms of differences in number, have often been the target of attack. See Booth v. [State of] Indiana, 237 U.S. 391, 397, 35 S.Ct. 617, 59 L.Ed. 1011. It is argued here, and it was ruled by the court below, that there can be no reason for a distinction, for purposes of taxation, between those who have only seven employees and those who have eight. Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not."

Appellee contends that there is no reasonable difference between a dealer who sells in lots of 24 gallons and one who sells in lots of 26 gallons. This is simply to beg the question. There is admittedly a vast difference in a wholesale dealer who sells in large quantities and a retail dealer who sells in small quantities. The legislature has simply set the dividing line between large and small conveniently at the 25 gallon mark. This is exactly the type of distinction pointed out and approved in

Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, and cases cited.

Appellee argues that the true distinction between "wholesale" and "retail" rests upon a consideration of whether or not the goods are purchased for resale or for direct consumption. While some of the cases do draw such a distinction as here suggested, we find that the decided weight of authority is to the effect that the primary consideration is whether the purchases are in large or small quantities. Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481; Florida Packing & Ice Co. v. Carney, 51 Fla. 190, 41 So. 190; Casebolt v. Kentucky-West Virginia Gas Co., 293 Ky. 178, 168 S.W.2d 773; Pa. Power & Light Co. v. Public Service Comm. of Pennsylvania, 112 Pa.Super. 500, 171 A. 412; Fleming v. American Stores Co., D.C.Pa., 42 F.Supp. 511; Wood v. Central Sand & Gravel Co., D.C.Tenn., 33 F.Supp. 40; 45 Words and Phrases 107. Even if this were not true, we believe that this question is set at rest by the very wording of the statute itself, which gives in explicit terms its own definition of "wholesale sales." State v. Coastal Petroleum Corp., 240 Ala. 254, 198 So. 610.

Our conclusion, therefore, is that the statute does not offend either the State or the Federal Constitutions and that the fixation of the tax is valid.

It results that the decree of the circuit court is reversed and a decree here entered sustaining the demurrer to the substituted bill and the cause is remanded to the circuit court with leave to the complainant to amend its bill as it may be advised.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.

## On Rehearing

BROWN, Justice.

The appellee in its application for rehearing correctly construes the opinion as holding that the amount of its gross sales for the preceding year is by the stat-

540

ute made the basis for computing the tax, such gross sales including all sales,—those made in quantities of less than twenty-five gallons as well as those in quantities of more than twenty-five gallons.

The provision of the statute is that such taxpayer "shall pay to the department of revenue for the use of the state, within two weeks from the beginning of the fiscal year, *the sum of one half of one percent on his gross sales for the preceding fiscal year, and such payment to the department of revenue shall be accompanied by a sworn statement* verified by the person having knowledge of the facts *showing the amount of the gross sales of such oils sold in the state during the preceding fiscal year.*" Code 1940, Tit. 51, § 634. [Italics supplied.]

This is the only basis fixed by the statute for computing the tax and there can be and is no doubt as to what it means. For the court to substitute any other basis for such computation would be judicial legislation, not judicial interpretation.

The legislature in enacting the statute had in mind big distributors of such oils, such as appellee, and in levying the tax on the privilege of engaging in business in this state used the terms "that is to say in quantities of twenty-five gallons or more" in setting up a constitutional classification, distinguishing the "proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not." Carmichael, Attorney General of Alabama, et al. v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 873, 81 L.Ed. 1245. And as observed in that case, "Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not." 301 U.S. 510-511, 57 S.Ct. 873, 81 L.Ed. 1245.

Yet is is suggested here that the little filling station operator sometimes sells more than twenty-five gallons in one lot. He is not taxed by this statute. He operates under the sales tax act and purchases at wholesale for resale to the consumer, who is taxed, and the seller collects the tax from him and accounts to the state therefore. Texas Co. v. Harold, 228 Ala. 350, 153 So. 442, 92 A.L.R. 523. In such instances the tax is fixed on the gallonage basis. But under the provisions of § 634, Title 51, Code of 1940, the basis of computation is the gross sales for the preceding year. All such sales are wholesale sales, and that is what the court said in Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861, 148 A.L.R. 260. In short, the statute levies the tax against the person for the privilege of engaging in the business of a wholesaler and the tax is exacted as the *quid pro quo* for the protection given by law to the taxpayer in the conduct of such business.

The application for rehearing is without merit and will be overruled.

Application for rehearing overruled.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.