(110 So. 797)

## NASH v. STATE. (6 Div. 26.)

(Court of Appeals of Alabama. Dec. 14, 1926.)

1. Licenses ⟜40—Operator of sawmill who paid license tax on such occupation held not criminally liable for failure to pay tax for selling lumber manufactured (Revenue Code 1923, schedules 125, 129).

Operator of sawmill, manufacturing logs into lumber, and selling lumber as part of same business, *held* not criminally liable for failure to pay license tax under Revenue Code 1923, schedule 129 (Acts 1919, p. 437, schedule 126), requiring exporters, wholesale dealers, and jobbers in lumber to pay license tax, where manufacturer paid tax under schedule 125, providing for tax on operation of sawmills.

2. Licenses ⟜12—License tax for "operating sawmill" applies to manufacture of rough dimension lumber into standard lumber (Revenue Code 1923, § 125).

Revenue Code 1923, § 125, requiring license tax for "operating sawmill," includes manufac-

ture of rough dimension lumber into finished product, as well as manufacture of logs, as statute includes all machines necessary to complete finished lumber.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Operate.]

3. Licenses ⟜16(13)—Statute requiring license tax of dealers in lumber does not apply to manufacturers converting raw material into finished product (Revenue Code 1923, schedules 125, 129).

Revenue Code 1923, schedule 129, providing license tax for exporters, wholesale dealers, and jobbers in lumber and timber, applies only to persons selling and handling lumber substantially in form in which bought, and does not apply to one manufacturing lumber of whom license is required under schedule 125.

4. Licenses ⟜36—One converting raw material into finished lumber has right to sell product under license permitting manufacture (Revenue Code 1923, schedules 125, 129).

Manufacturer of lumber, converting crude material into finished product, who pays license under Revenue Code 1923, schedule 125, has right to sell and dispose of product under such license from mill at either wholesale or retail; schedule 129 not being applicable.

Appeal from Circuit Court, Lamar County; R. L. Blanton, Judge.

E. V. Nash was convicted of violating the revenue laws in failing to take out the required license for doing business as wholesale lumber dealer, and he appeals. Reversed and remanded.

J. C. Milner, of Vernon, for appellant.

Counsel discusses the question raised and treated, but without citing authorities.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAMFORD, J. [1] Schedule 125 of the Revenue Code of 1923, being the same as Schedule 122 of the Revenue Act of 1919 (Acts 1919, p. 437), provides a license tax for each person, firm, or corporation engaged in operating a sawmill, the amount being fixed by the capacity of the mill operated. Schedule 129 of the 1923 Code, being the same as schedule 126 of the 1919 acts, provides a license tax for each exporter, wholesale dealer, or jobber of lumber and timber. The corporation of which defendant was manager, paid the license under schedule 125, supra, but refused to comply with schedule 129, supra, claiming that whatever business was done by the corporation was protected by its license under schedule 125. It is admitted that whatever business was done was the act of defendant as the alter ego of the Kentucky Lumber Company, a corporation of which he was manager. It also appears that the only

business carried on by the Kentucky Lumber Company was through its sawmill at Sulligent, Ala., which sawmill was equipped with complete machinery for the manufacture of lumber, and that for the most part this manufacture began with rough logs, and ended when the finished product was in standard shapes, sizes, and grades, ready for market. A small percentage of the material for standard lumber was purchased from small and inferior mills near by, none of which had been completely manufactured into standard product. When the rough dimension product was purchased, it was in every instance put through a process of manufacture in defendant's mill to bring it to standard requirements necessary for it to be sold as standard lumber.

[2] From a reading of schedule 125, supra, covering sawmills of every capacity then being operated in this state, we have no doubt that in fixing this license the Legislature had in mind lumber plants such as is operated by the defendant, which includes all machines necessary to bring lumber from the crude to the finished product, and certainly there can be no doubt as to the right of defendant to dispose of this product by sale from the mill, either at wholesale or retail, under schedule 125. If the defendant had maintained a separate business where lumber was bought and sold at wholesale, whether the stock was confined to the product of one mill or any other number, he would be required to pay the license demanded by schedule 129.

[3, 4] In this case the only business engaged in by defendant and for which a license is demanded is the sale of the manufactured product of the mill of his principal the Kentucky Lumber Company. Schedule 129 is applicable to those persons whose business is that of buying, selling, and handling lumber and timber substantially in the form in which it is bought, and does not apply to those who buy the crude lumber or timber, and by skill and labor convert it into a finished manufactured product. Such a one is a manufacturer, and not a trader. In this lies the distinction between schedules 125 and 129. Schedule 125 applies to a manufacturer, who takes the crude material, and by the aid of machinery, skill, and labor converts it into a higher and more finished product. As such he has the right to sell and dispose of his product under a license issued in pursuance to schedule 125. Schedule 129 applies to those persons who trade in lumber or timber, buying, selling, and handling the product as it comes to their hands, and without substantial change. State v. Chadbourn, 80 N. C. 479, 30 Am. Rep. 94; 26 R. C. L. p. 239, par. 212. The trial judge was in error in rendering judgment of conviction, to which exception was properly reserved.

The judgment is reversed, and the cause is remanded, with instructions that the same shall be dismissed, unless on another trial the facts should be materially different.

Reversed and remanded.