197 So. 382

**STATE v. DOWNS.**

5 Div. 324.

Supreme Court of Alabama.

June 6, 1940.

Rehearing Denied June 27, 1940.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for the motion.

Reynolds & Reynolds, of Clanton, opposed.

BOULDIN, Justice.

Certiorari to review the decision of the Court of Appeals in State of Alabama v. J. B. Downs, 29 Ala.App. 442, 197 So. 379.

The statement of facts is set out in the opinion of the Court of Appeals.

The action is to recover the privilege taxes alleged to be due from defendant as a "wholesale dealer in lumber" for the years 1933 to 1937, inclusive, levied under license Schedule 126, Section 361, Gen.Acts 1919, p. 438, and Schedule 84, Section 348, Gen. Acts of 1935, p. 473, after this act became effective.

In the statement of facts it is expressly shown that during the period in question defendant sold timber and lumber from his lumberyard operated in Clanton, Alabama, "to wholesalers, retailers, and consumers in car lots, or in less quantities."

Sales to wholesalers and retailers as thus shown clearly denote the business of a "wholesaler" of lumber.

Whether he is to be classed as a "wholesale dealer in lumber" turns on the meaning of this expression as commonly defined, and in its connotation in our statutes.

In fixing a schedule of privilege or license taxes in the General Revenue Act of 1919, followed by the General Revenue Act of 1935, a privilege tax was levied on special lines of business identified with, and a part of what we may term the lumber industry.

Among them is a privilege tax payable by persons "engaged in operating a saw mill." Gen.Acts 1919, Section 361, Schedule 122, p. 437; Gen.Acts 1935, Section 348, Schedule 123, p. 490.

This is a graduated tax based on the capacity of the mill. Its location does not figure in fixing the amount. This schedule includes all sawmills, from the small portable mill, sawing lumber in the rough, to the large plant, in connection with which lumber is dried and finished ready for the saw and the hammer in the construction industry, and from which shipments are made to wholesale and retail lumber dealers.

Another privilege tax is levied on persons "operating a lumber yard." Gen.Acts 1919, Section 361, Schedule 125, p. 438; Gen.Acts of 1935, Section 348, Schedule 83, p. 473.

This tax is graduated on the basis of the number of inhabitants of the city where located.

In the Act of 1935, supra, it is provided: "This shall not apply to regularly licensed sawmills selling lumber *at retail* at it or his plant." (Italics supplied.)

It will be noted no separate privilege tax is levied on retailers of lumber. The operation of a lumberyard, bringing in and selling out at retail, is covered by the lumberyard license, based on local demand by reason of location; and retail sales from the sawmill plant, are covered by the sawmill license. Immediately following the "lumber yard" schedule in both the Acts of

1919 and 1935, is the schedule covering the "wholesale dealer in lumber."

In the Gen.Act of 1919, p. 438, Section 361, Schedule 126 reads: "For each exporter, wholesale dealer, or jobber of lumber and timber, and for each dealer in lumber and timber on commission, one hundred dollars."

In the Gen.Act of 1935, p. 473, Section 348, Schedule 84 reads: "For each wholesale dealer, or jobber of lumber and timber and for each wholesale dealer in lumber and timber on commission *whether maintaining an established place of business or not,* One Hundred Dollars ($100.00)." (Italics supplied.)

We have italicized the clause inserted in the Act of 1935. We deem it significant. A lumberyard, a place of business in filling wholesale orders, does not enter into the definition of wholesale dealer, and, hence, the lumberyard license does not cover wholesale shipments therefrom.

We note in passing, as a matter of information, the Act of March 2, 1937, (Acts Special Session, 1936–37, p. 279) levying a privilege tax on planing mills, etc., but excepting operators of sawmills and wholesale dealers, who have paid the license under Schedules 123 or 84 of the Act of 1935.

Here is a legislative recognition of the well-known fact that processing lumber to meet the demands of the trade is part of the activity of the wholesale lumber dealer. The statement of facts discloses that defendant purchased standing timber; contracted or hired persons to log it to designated sawmills; that he contracted or hired these mills to saw it as specified; contracted or hired it hauled to the lumberyard at Clanton, where it was dried, finished and sold on the wholesale and retail market.

He paid no sawmill license. This presumedly was paid by the sawmill operator. He paid only a license for operating a lumberyard.

The Court of Appeals takes the view that defendant is to be classed as a manufacturer marketing his own product, and, therefore, not subject to license as a wholesale lumber dealer.

In Nash v. State, 21 Ala.App. 613, 110 So. 797, the finishing plant was connected with, and held to be a part of, the sawmill plant. The owner and operator, having paid the sawmill license, was held to be a manufacturer, not subject to the privi-

lege tax levied upon the wholesale lumber dealer under the Act of 1919.

A wholesale lumber dealer was defined as one who buys and resells lumber at wholesale on substantially the same condition as when purchased. This rule, as applied to many taxing schemes, has been recognized by this court. American Bakeries Co. v. City of Opelika, 229 Ala. 388, 157 So. 206.

In this case it was held such construction should not be given when out of keeping with the intent as gathered from the connotation and conditions to which the statute or ordinance applies. A manufacturer of bread was held subject to license as a retailer under the facts of that case. See, also, 37 C.J. p. 224.

■ One of the basic principles in the construction of privilege tax laws is that they shall be based on a reasonable classification, and apply to all within the class.

As disclosed by our statutes, the legislature has imposed a privilege tax on several classes, each of which is within what may be broadly termed the lumber industry.

■ As amended or clarified by the Act of 1935, we are convinced a wholesale dealer in lumber means one who sells at wholesale, no matter at what stage it has been purchased.

■ The large lumber dealer naturally looks to a continuing source of supply by acquiring stumpage. If he is freed from the tax burdens of the dealer who buys and sells at a more finished stage, then the law is made to work a discrimination in his favor. Such construction is not to be favored. Hence, the statute, Acts 1935, p. 561, Section 356, requires a license for each business conducted.

■ The Act of 1935 is now the law as to all demands accruing since its enactment. There is no occasion now to determine whether the Nash case properly construed the Act of 1919 as to the case then in hand. The operations of this defendant prior to the Act of 1935 were not the same as in the Nash case. This defendant did not operate a sawmill plant, paying a license therefor, and did not sell at wholesale from such plant. His wholesale business was conducted in connection with his lumberyard in Clanton.

The lumberyard license covered only retail sales as above pointed out.

The writ of certiorari is granted and the cause remanded to the Court of Appeals for further proceedings.

Writ of certiorari granted; reversed and remanded.

All Justices concur.