198 So. 610

**STATE v. COASTAL PETROLEUM CORPORATION.**

1 Div. 108.

Supreme Court of Alabama.

Oct. 10, 1940.

Rehearing Denied Nov. 22, 1940.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellant.

Marion R. Vickers, of Mobile, for appellee.

LIVINGSTON, Justice.

This suit was instituted by the State of Alabama to recover a license or privilege tax claimed to be due by the Coastal Petroleum Corporation for the fiscal years beginning October 1, 1933, to and including the fiscal year ending September 30, 1939, and under and by virtue of the provisions of schedule 74, section 361, of the Revenue

Act of 1919 (General Acts of 1919, page 424, as amended by Act of 1923, page 36) and schedule 138.3, section 348, of the General Revenue Act of 1935 (General Acts 1935, page 495).

The case was tried without a jury upon an agreed statement of facts, and resulted in a judgment for the defendant, the Coastal Petroleum Corporation. The agreement, as to the facts upon which this cause was tried in the court below, is as follows:

"It is agreed by and between the parties hereto that the following stated facts are true, and that this agreement may be filed on the hearing of this cause, and no further proof shall be required of such facts, namely:

"The defendant, Coastal Petroleum Corporation, from October 1, 1933, to and including September 22, 1939, was engaged in business in Mobile County, Alabama. Such business consisted of the operation of a refinery in which the defendant refined crude oil into various petroleum products, including illuminating oil and fuel oil. The defendant, during each year of the period above mentioned, sold a portion of such illuminating oil and fuel oil within the State of Alabama. All such sales of said oils were made in quantities of more than twenty-five gallons. A portion of such sales made within the State of Alabama were made to dealers engaged in the business of reselling such products at retail, and the remainder of such sales were made directly to consumers of such products. There is attached hereto, marked Exhibit 'A', and made a part of this agreed statement of facts, a statement showing the gross proceeds received by the defendant for sales of illuminating and fuel oils within the State of Alabama in the fiscal year from October 1, 1933, to September 30, 1934, and for each fiscal year thereafter, to and including the fiscal year beginning October 1, 1937, and ending September 30, 1938.

"The sales shown on 'Exhibit A' do not include sales made to the United States Government, or the sales of the illuminating or fuel oils sold in export or in interstate commerce, and it is agreed that such excepted sales are not subject to the tax claimed in the complaint in this case.

"The defendant has not, at any time, made or filed any statement or return to or with the State Tax Commission or the State Department of Revenue, of gross sales made by it in Alabama, of illuminating, lubricating, or fuel oils, nor has the defendant paid to the State of Alabama any license or privilege tax upon said gross sales made by it in Alabama, of illuminating, lubricating, or fuel oils for or during any period mentioned in the complaint filed in this cause.

"The plant maintained and operated by the defendant, during the time covered by this agreement, is what is generally known as a gasoline refinery, and during the period covered by the complaint, the company brought in from the state of Texas to its plant in Mobile, Alabama, crude oil, and this crude oil was then manufactured into gasoline and other petroleum products, among the petroleum products being illuminating oil and fuel oil; that in the conduct of its said business a part of said illuminating oil and fuel oil was sold by the defendant within the State of Alabama, in quantities of twenty-five gallons or more as has been outlined above. That the defendant did not purchase any illuminating, lubricating, or fuel oils for the purpose of resale in Alabama at wholesale, that is to say, in quantities of twenty-five gallons or more, or for any purposes, during the period or periods covered by complaint; and that the only sales of illuminating or fuel oils made by defendant in Alabama during the period covered by the complaint and with reference to which the license or privilege tax is claimed in this case, were sales of illuminating and fuel oil so manufactured or refined by the defendant at its plant in Mobile County, Alabama.

"Coastal Petroleum Corporation does not maintain a place of business separate and apart from its refinery, where any of its products are sold at wholesale, that is to say, in quantities of twenty-five gallons or more, or in any other fashion, and every product manufactured by Coastal Petroleum Corporation is sold from its manufacturing plant or refinery in Mobile County, Alabama, and was so sold during the periods mentioned in said complaint. The plant of Coastal Petroleum Corporation was established on September 5, 1931, and prior to that time there was no plant in Alabama manufacturing or refining gasoline and other petroleum products, and there is, at the present time, no plant other than Coastal Petroleum Corporation, which manufactures or refines gasoline or other petroleum products in the State of Alabama, nor has there been any other such plant during the intervening period.

"Attached hereto and marked Exhibit B is a copy of the form furnished by the

State Tax Commission for use in making statement required in Acts mentioned in complaint."

It is the contention of the State that the statutes impose the tax upon everyone exercising the privilege of selling such enumerated oils at wholesale as defined therein, namely, "in quantities of twenty-five gallons or more." On the other hand, the defendant insists that the statutes impose a tax upon "wholesale dealers" only, that is to say, upon the occupation or business of being a wholesale dealer engaged in selling such oils, and that the defendant is a manufacturer as distinguished from a "wholesale dealer" or "wholesaler."

Differently expressed, the question presented by this record is this: Does schedule 138.3, page 495, of General Acts of 1935, and which for the purpose of this case is a substantial reenactment of schedule 74, page 424, of General Acts of 1919, impose a tax, in the nature of a "wholesale sales tax," upon all who sell the oils enumerated in the Act in wholesale quantities, that is to say, in quantities of twenty-five gallons, or more, or does the Act impose a tax on the business or occupation of wholesalers, or wholesale dealers, as such, who are engaged in the business of selling such oils at wholesale, as defined in the Act?

Schedule 138.3, General Acts of 1935, page 495, is as follows: "Wholesale Oil. Each person, firm, corporation or agency selling illuminating, lubricating, or fuel oils at wholesale, that is to say in quantities of twenty-five gallons or more, shall pay to the State Tax Commission for the use of the State, within two weeks from the beginning of the fiscal year, the sum of one half of one percentum of his gross sales for the preceding fiscal year, and such payment to the State Tax Commission shall be accompanied by a sworn statement verified by the person having knowledge of the facts showing the amount of the gross sales of such oils sold in the State during the preceding fiscal year. No county license shall be charged under this schedule. A copy of said statement shall at the same time be filed with the State Tax Commission. *The books of such person so engaged in such business shall be accurately kept and shall show the date, character and quantity of such oils, received by him for sale in this State, and the name and post office address of the person from whom received,* and said books shall also show the date, character and quality [quantity] of each sale made, together with name and address of the person to whom sold; and when consigned to an agent for sale in this State, the date, character and quantity of such consignment, together with the name and address of such agent, and place of consignment. Such books shall always be open to inspection of the State Tax Commission. Any person failing to make such sworn statement, or making a false statement, or failing to keep his books in substantial compliance with this schedule, shall be guilty of a misdemeanor and upon conviction therefor shall be fined not exceeding five hundred dollars, and also forfeit to the State three times the amount of said license on such gross sales, but no tax shall be paid to the county." (Italics supplied.)

■ In construing taxing statutes, which are of doubtful effect, the taxpayers must be given the benefit of the doubt, and such statutes must be construed in favor of the taxpayer and against the State. State v. H. G. Fain Service Station, 23 Ala.App. 239, 124 So. 119; Jefferson County v. Smith, 23 Ala.App. 421, 125 So. 401; Hill Grocery Co. v. State, 26 Ala.App. 302, 159 So. 269; Azar v. State, 27 Ala.App. 49, 166 So. 811.

■ The agreed facts, hereinabove set out, clearly bring the defendant, the Coastal Petroleum Corporation, within the definition of a manufacturer, as distinguished from "wholesaler", "dealer", "jobber", "mechanic", "merchant", "seller", and "tradesman".

In the case of Chattanooga Plow Co. v. Hays, 125 Tenn. 148, 140 S.W. 1068, 1069, that court said: "The marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned." 38 Corpus Juris 969(13) c, note 36.

The State insists that this case is controlled by the recent decision of this Court in J. R. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560, 561, and in which Mr. Justice Brown said: "The facts of the case stated in the opinion of

the Court of Appeals [194 So. 556 [1]], stated in short above, show that the plaintiff manufactures barrels and kegs and sells the same 'to users or consumers.' Such sale is not within the definition of 'Wholesale Sale,' as defined by said Act No. 126. The Act provides: 'The term "wholesale sale" or "Sale at wholesale" means a sale of tangible * * * property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and *does not include a sale by wholesalers to users or consumers, not for resale.'* Acts 1936–1937, Special Session, General and Local Acts, pp. 125, 126, § 1. (Italics supplied.) The barrels and kegs are purchased not for resale but for use or consumption, and such sales are subject to the tax as retail sales, notwithstanding the barrels, after use, may have some resale value."

The Court in the Raible case, supra, construed the Act approved February 23, 1937, General and Local Acts 1936–1937, Special Session, pages 125–126, section 1, generally known as the Luxury Tax Act. By the terms of the Act itself, "wholesale sale" or "sale at wholesale," and "sale at retail," or "retail sale" were clearly defined and such definitions brought the operations of the Raible Company within the meaning of "retail sales," and subject to the tax imposed by the Act on "retail sales."

The State also insists that the instant case is within the influence of the recent case of State v. Downs, Ala.Sup., 197 So. 382, 384,[2] which case was put upon the language of the statute. The Act of 1935 (General Acts 1935, page 473), section 348, schedule 84, reads: "For each wholesale dealer, or jobber of lumber and timber and for each wholesale dealer in lumber and timber on commission *whether maintaining an established place of business or not,* One Hundred Dollars ($100.00)." The italicized words were added to the 1935 Act in the reenactment of the 1919 Act, page 438, section 361, schedule 126. Mr. Justice Bouldin, in speaking of the amendment, said: "As amended or clarified by the Act of 1935, we are convinced a wholesale dealer in lumber means one who sells at wholesale, no matter at what stage it has been purchased." Here again the terms or language of the Act, with the facts of that case, determine its application.

In the case now before this Court, we are dealing with schedule 74 of the Act of 1919, page 424, as amended by the Act of 1923, page 36, and the Act of 1935, schedule 138.3, page 495. Schedule 138.3, page 495 of the 1935 Act is a substantial reenactment of schedule 74, as amendatory of the Act of 1919, page 424.

Under the agreed statement of facts, "The Coastal Petroleum Corporation does not maintain a place of business separate and apart from its refinery, where any of its products are sold at wholesale, that is to say, in quantities of twenty-five gallons or more, or in any other fashion, and every product manufactured by the Coastal Petroleum Corporation is sold from its manufacturing plant or refinery in Mobile County, Alabama, and was so sold during the periods mentioned in the complaint."

Considering the statutes here involved in connection with the subsequent passage of the gross receipt tax of 1936–1937, and weighing them all in the light of the external historical facts which led to their enactment, we hold that the tax here involved does not apply to persons, firms or corporations engaged solely in manufacturing, whether their products are sold in large or small quantities. The incidents of manufacture, as such, consist of the acquisition of material and the disposal of the product. 38 Corpus Juris 989, section 62. Of course a manufacturer may deal as a wholesaler or retailer if he manufactures his stock in trade and offers it for sale as a merchant, dealer, wholesaler or retailer.

We therefore conclude that the defendant was and is a manufacturer, one who sold its products to take a profit already earned, and does not come within the terms of the Acts on which this suit was based. Nash v. State, 21 Ala.App. 613, 110 So. 797.

The judgment of the lower court is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.

---

[1] 29 Ala.App. 184.

[2] Ante, p. 71.