38 So.2d 598

**STATE v. HOLT.**

**5 Div. 257.**

Court of Appeals of Alabama.
Aug. 3, 1948.

Rehearing Denied Oct. 5, 1948.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn Jr., Asst. Atty. Gen., for appellant.

Holley, Milner & Holley, of Wetumpka, for appellee.

CARR, Judge.

The appellee filed a motion to strike the transcript of the evidence. On petition of the Attorney General this court set aside the former submission of the cause and ordered that a writ of certiorari issue to the clerk of the lower court commanding him to complete the original record. The compliance with this command has resulted in correction and completion of many of the objections on which the grounds of motion to strike were based. In the present state of the record the motion presents moot questions, and it is therefore overruled.

Complaint is made that the brief of appellant fails to substantially comply with Supreme Court Rule No. 10, Code 1940, Tit. 7 Appendix, in that there is not a condensed recital of the evidence in narrative form. The point is taken that the recitation of the evidence in the brief is too extended and too much in detail. In other words, that it is not sufficiently condensed.

It may be accurately stated that with more care the author of the brief could have abridged the delineation of the tendencies of the evidence. However, we hold that the spirit of the rule has not been

violated and it would be ultra technical to entertain a contrary view.

The cause of action was instituted by the State to recover a wholesale lumber dealer's license for the period from October 1, 1943, to September 30, 1945. In the court below there was a judgment in favor of the defendant.

The schedule of the Revenue Act involved provides: "Each wholesale dealer, or jobber of lumber and timber and for each wholesale dealer in lumber and timber on commission whether maintaining an established place of business or not, one hundred dollars." Title 51, Sec. 546, Code 1940, Acts 1935, p. 473.

The evidence is not in conflict in material aspects. It appears that, during the period of time in question, the defendant was extensively engaged in the manufacture and sale of lumber. He possessed considerable acreage of standing, merchantable timber. He owned and operated several small sawmills which were located in an area in the general location of the standing timber. In addition, he owned and operated a sawmill and planing mill in the vicinity of Elmore, Alabama. The latter plant was equipped with the usual planing mill machinery and a resaw. The two operations were not under the same roof, but were fairly close to each other. With slight exception, all of the lumber that was cut at the sawmill near by and at the smaller sawmills which the defendant operated was conveyed to the planing plant and there resawed if required, trimmed, planed, sized, and dried. In its finished state it was, for the most part, sold at wholesale.

In addition to this source of obtaining material, the appellee bought some rough lumber from parties who owned their own timber and operated their own sawmills. This lumber was delivered at the planing plant and underwent the same finishing processes as indicated above. It appears that the rough lumber thus purchased constituted about five per cent of the total amount used in the entire operation at the planing mill.

The Taxpayer procured a license to operate each of his sawmills. Title 51, Sec. 585, Code 1940. The State contends that he was also due to obtain license as a wholesale lumber dealer. Title 51, Sec. 546, supra.

It is evincingly clear that, by the enactment of the two sections just above, the legislature intended to make the provisions of the former section apply to lumber manufacturers and the latter to wholesale dealers in lumber. It remains, therefore, to determine the classification to which the defendant justly belongs.

The courts have drawn a line of marked distinction between manufacturers and merchants or dealers. Our Supreme Court in State v. Coastal Petroleum Corp., 240 Ala. 254, 198 So. 610, adopted the following statement from the opinion in Chattanooga Plow Co. v. Hays, 125 Tenn. 148, 140 S.W. 1068:

"The marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned." [240 Ala. 254, 198 So. 612.]

See also, 55 C.J.S., Manufactures, § 1, Subsections (2) and (3), pages 674 and 675.

██ It is also pointed out in the same case that in construing taxing statutes, which are of doubtful application, the taxpayer will be afforded the benefit of any doubt, and such statutes should be construed in favor of the taxpayer and against the State. See also, Jefferson County v. Great Atlantic & Pacific Tea Co., 237 Ala. 103, 185 So. 766; National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478; Hill Grocery Co. v. State, 26 Ala.App. 302, 159 So. 269.

In the case of Nash v. State, 21 Ala. App. 613, 110 So. 797, this court had under review a question involving the application of the following schedule:

"For each exporter, wholesale dealer, or jobber of lumber and timber, and for each dealer in lumber and timber on commission, one hundred dollars." Schedule 126, Acts 1919, p. 438.

The facts are only briefly delineated in the opinion. To assure a more accurate study of the opinion, we have carefully read the original record. For purposes of comparison, we will set out the pertinent parts.

The defendant was extensively engaged in the manufacture and sale of lumber. He possessed considerable acreage of standing, merchantable timber. He owned and operated some small sawmills. In addition, he owned and operated a sawmill and planing mill in the town of Sulligent, Alabama. The latter plant was equipped with the usual planing mill machinery and a resaw. With the exception of a small portion, which he sold in the rough stage directly from his sawmills, the entire output from these operations was conveyed to his planing mill at Sulligent. This included the output from his larger sawmill near his planing plant. In addition to the material thus obtained, he bought rough lumber from six different persons who were in no manner connected with the defendant in any of his timber ownership or sawmill operations. This material was also delivered on the yards at the planing plant. All of the rough lumber indicated was processed through the planer mill by resawing, if required, trimming, planing, sizing, and drying. In this finished state, a major portion of it was sold at wholesale. The rough lumber obtained from the six persons indicated constituted a small percentage of the entire amount which passed through the planing mill processing.

Even at the risk of being tedious and repetitious, we have particularized the facts in comparative form with those in the case at bar. The inevitable conclusion follows that if the holding in the Nash case is sound the judgment below in the instant case must be sustained.

The Nash case was not reviewed by the Supreme Court. It was, however, cited with approval in the case of State v. Coastal Petroleum Corp., supra.

The case of State v. Downs, 240 Ala. 74, 197 So. 382, is clearly distinguishable from the instant case. In the Downs case the taxpayer did not own or operate any sawmills. He was the operator of a lumber yard, however, and paid a license as such.

It must be conceded that some statements in the opinion, if taken alone, do lend support to the contention of the State in the case at bar. For example—"As amended or clarified by the Act of 1935, we are convinced a wholesale dealer in lumber means one who sells at wholesale, *no matter at what stage it has been purchased.*" (Emphasis ours.)

To give this utterance the meaning which the State urges would destroy all lines of demarcation between manufacturers and dealers in relation to our license schedules. Under every circumstance a manufacturer would inevitably and of necessity be also a dealer. For the sale of manufactured products is an indispensable adjunct and appurtenance to the manufacturing industry.

A contrary construction is evinced by a further observation found in the opinion: "The operations of this defendant prior to the Act of 1935 were not the same as in the Nash case. This defendant did not operate a sawmill plant, paying a license therefor, and did not sell at wholesale from such plant. His wholesale business was conducted in connection with his lumberyard in Clanton."

In a subsequent opinion—State v. Coastal Petroleum Corp., supra—the Supreme Court gave recognition to the distinction between a manufacturer and a dealer. It was there declared that under the terms of the applicable act and the facts appearing the holding in the Downs case was not controlling.

In making the contrast the court observed: "The Coastal Petroleum Corporation does not maintain a place of business separate and apart from its refinery, where any of its products are sold at wholesale, that is to say, in quantities of twenty-five gallons or more, or in any

other fashion, and every product manufactured by the Coastal Petroleum Corporation is sold from its manufacturing plant or refinery in Mobile County, Alabama, and was so sold during the periods mentioned in the complaint."

In the case of Adams et al. v. Curry, etc., 243 Ala. 90, 8 So.2d 578, 579, the Supreme Court again had under review a question involving the provisions of the schedule of instant concern.

Justice Brown, writing for the court, pointed out in effect that only one-sixth of the average output of the planing plant was cut by the taxpayer's own sawmill. In consonance with this situation the justice observed:

"In applying the tax the classification or reclassification cannot be arbitrary, fanciful or capricious, but must have a substantial basis as distinguished from a mere fictitious or fanciful basis."

Under the disclosed facts, this case is not controlling nor influencing.

The conclusions reached in the Nash case appear to be sound, clearly within the competence of the applicable schedule, and in consonance with the obvious intent of the framers of the law. We are not impressed that it is out of harmony with the adjudicated cases of the Supreme Court.

See also, 26 R.C.L., Sec. 212 p. 239; State v. Chadbourn, 80 N.C. 479, 30 Am. Rep. 94; Chattanooga Plow Co. v. Hays, supra.

In the case just above the Tennessee Supreme Court published a very full and comprehensive opinion. The case appears often among the cited authorities.

The Assistant Attorney General in brief places stress and emphasis on the fact that the defendant's sawmill and planing plant at Elmore were separated by a distance of about one-quarter or one-half mile. We cannot see how this can be of much material concern, if any. It is the nature and character of the operations that fix their classifications. The placement of plants of the kind in question necessarily requires the use and accessibility of considerable area for yardage purposes, as well as much space for machinery equipment.

The judgment of the court below is ordered affirmed.

Affirmed.

### On Rehearing.

In deference to the insistence of the Assistant Attorney General we will delineate some portions of the evidence more specifically.

In our original opinion we stated "the taxpayer procured a license to operate each of his sawmills." It appears that in the case of the smaller mills which were owned by the appellee the licenses were issued in the name of the persons who were employed to manage the operation of the mills. As to this the record discloses:

"Q (To Mr. Holt) In every instance where you owned the mill a license would be taken out in their name and you would pay them back?"

"A Yes, I would reimburse them when we had a settlement if they had taken out the license."

With reference to other methods of securing rough lumber for the planing mills, Mr. Holt testified:

"I owned seven complete mills, and this is the way I would operate. A man would come along and say 'You've got a tract of timber up here. How about me cutting it?' and I'd say 'All right, have you got a mill', and he'd say 'Yes, but I've got no mules' and I'd say, 'Well, I'll get the mules for you' and he'd say 'Will you haul the lumber?' and I'd say 'Yes, I'll pay you so many dollars a thousand. Go on up there and cut the lumber.' And he would go there and I'd never see the place. Another man would come and say 'I've got a mill and you've got a little tract of timber by my house. How about me cutting it?' and I'd say 'All right, go ahead and when you get it cut out I'll haul it for you.' And then in these other cases I would put my own mill in charge of other people."

We stated also in the original opinion that: "In its finished state it was, for the most part, sold at wholesale." By this we meant the sales were made after the rough

lumber had been processed through the planing mill.

The other questions upon which insistence is made in the application for a rehearing have been treated in our original opinion and a further discussion would lead only to a repetition.

We still entertain the view that the taxpayer was not a wholesale dealer within the purview of the statute in question.

The application for rehearing is overruled.