38 So.2d 602

### STATE v. HOLT.

5 Div. 462.

Supreme Court of Alabama.
Jan. 20, 1949.

Holley, Milner & Holley, of Wetumpka, opposed.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., Asst. Atty. Gen., for the petition.

STAKELY, Justice.

The Court of Appeals found from the evidence that the defendant was a manufacturer of lumber and sold his manufactured product from his plant at Elmore. About 95% of his raw material was acquired from tracts of timber owned by him and cut with his own sawmills. About 5% of his raw material was acquired in a rough state from parties who owned their own timber and operated their own sawmills. With small exception all the raw material was processed through defendant's plant at Elmore. He paid his sawmill license but the state contends that he is also liable for a wholesale license. The Court of Appeals followed the reasoning which is set forth in Nash v. State, 21 Ala.App. 613, 110 So. 797, a case previously decided by it. That case never reached the Supreme Court but it was cited with approval by this court in the case of State v. Coastal Petroleum Corp., 240 Ala. 254, 190 So. 610.

On this petition for certiorari the state insists that the foregoing authorities are not only not controlling but are contrary to two decisions of this court, namely; State v. Downs, 240 Ala. 74, 197 So. 382, and Adams v. Curry, 243 Ala. 90, 8 So.2d 578. The state points out that the Nash case interpreted the wholesale lumber dealers' license as it existed prior to the amendment thereof in 1935 and the Downs and Adams cases interpreted this schedule after its amendment. Schedule 129 was amended by adding the following words "whether maintaining an estabished place of business or not." § 546, Title 51, Code of 1940. As stated in Nash v. State, supra, the manufacturer began with rough logs and ended when the finished products were in standard shapes, sizes and grades, ready for market. A small percentage of material was purchased from small and inferior mills nearby, none of which had been completely manufactured into standard products. When the rough dimensions product was purchased it was put through a process of manufacturing in the defendant's mills to bring it into standard requirements necessary for it to be sold as standard lumber.

In citing the Nash case with approval this court in State v. Coastal Petroleum Corp., supra, also cited the well known case of Chattanooga Plow Co. v. Hays, 125 Tenn. 148, 140 S.W. 1068, 1069, a Tennessee authority where the distinction between a manufacturer and a merchant is pointed out. In that case the court said that the merchant dealer sells to earn a profit and the manufacturer sells to take a profit already earned.

In State v. Downs, supra, the defendant did not operate a sawmill plant and did not pay a sawmill license. He paid only a license for operating a lumber yard and sold the lumber from his lumber yard at Clanton. It was held that the defendant was liable for the wholesale lumber license and it was pointed out that the facts were different from those in the Nash case.

In Adams v. Curry, supra, the complainants paid a sawmill license. They also operated a planing mill which was used for dressing and edging lumber cut at the sawmill belonging to complainants and for dressing and edging lumber bought by complainants which had been cut by sawmills other than those owned and operated by complainants. Five-sixths of the lumber which was delivered to complainants' sawmill was cut by sawmills other than those owned and operated by complainants. Only ⅙th of the average used was lumber cut by complainants' own sawmill. Under these facts it was held that the complainants were liable for a wholesale license.

■■ We think it well to take note of the 1945 act, Title 51, § 546, Pocket Part, Code of 1940. These words added by this act to the former schedule "provided such purchases do not exceed in volume the lumber manufactured by such operator at his own plant or plants" apparently were inserted for the purpose of permitting the line of demarcation between a manufacturer and a wholesaler to be ascertained with mathematical certainty. It is a rule of construction that statutes can be construed as declaratory of the law as it previously existed. Azar v. State, 27 Ala.App. 49, 166 So. 811, certiorari denied 232 Ala. 80, 166 So. 812; Mayor and Aldermen of the City of Ensley v. Hollingsworth & Co., 170 Ala. 396, 54 So. 95.

■ Under the amendment of 1945 it is obvious that Adams of the Adams v. Curry case would be liable, whereas Holt, the defendant in the present case, would not be liable. As we have pointed out, in the Adams case ⅚th of the lumber purchased by the operator was cut by sawmills other than those owned and operated by Adams, while in the present case 95% of the raw material was from tracts of timber owned by Holt and cut with his own sawmills. When all of these cases are considered together and taken in the light of the 1945 act it seems that they are in harmony and the decision of the Court of Appeals was correct.

■ We have not overlooked the contention of the state that under §§ 838 and 839, Title 51, Code of 1940, where any person is engaged in more than one business which is subject to taxation, such person shall pay the license provided by law "on each branch of the business." It does

not seem to us that these sections should be construed to break down the line of demarcation between a manufacturer and a wholesaler because obviously the manufacturer must dispose of his product after it has been manufactured. Such disposition is an integral part of the manufacturing business.

Writ denied.

FOSTER, LAWSON, and SIMPSON, JJ., concur.