122 So.2d 126

**STATE of Alabama**

v.

**GRAYSON LUMBER COMPANY.**

6 Div. 231, 232, 233.

Supreme Court of Alabama.

July 14, 1960.

———◇———

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

Cabaniss & Johnston, Lucien D. Gardner, Jr., and Geo. F. Maynard, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

Under the provisions of Title 51, Sec. 546, Code of Alabama 1940, as amended by Act No. 460, Gen.Acts of Alabama 1945, p. 693, the Revenue Department of the State of Alabama made final assessments against Grayson Lumber Company, Inc., in three separate cases, for privilege taxes due as a wholesale dealer in lumber. One case covered the fiscal period beginning October 1, 1954 and ending September 30, 1955; another, for the fiscal period beginning October 1, 1955 and ending September 30, 1956; and another for the fiscal period beginning October 1, 1956 and ending September 30, 1957.

Under the provisions of Sec. 140 of Title 51, Code of 1940, the three cases were appealed to the Circuit Court of the Tenth Judicial Circuit of Alabama.

It is admitted that the three cases are identical as to the law and facts, and differ only as to the fiscal period covered by the different assessments.

By agreement of the parties and with the consent of the trial court, the three appeals were consolidated and tried together in that court. After hearing the evidence ore tenus, the trial resulted in a decree of the lower court to the effect that the tax was not due. The state took appeals in all the cases by giving separate notices of appeal. The cases were docketed here as 6 Division 231, 232 and 233.

The three appeals were consolidated, argued and submitted here on one record, with the agreement of the parties that one opinion and decision would suffice for the three cases.

We will hereinafter refer to the parties as "Grayson" and "the state." The facts, in material aspects, are not disputed.

During the years in question, Grayson operated a plant in the City of Birmingham consisting of a lumber yard and a planing mill, and for which privileges he procured a planing mill license under Sec. 614 of Title 51, Code of 1940, and a lumber yard license under Sec. 547 of Title 51, Code of 1940.

Grayson owned standing timber. He contracted with sawmill operators to cut the standing timber into logs, saw the logs into rough green lumber, and deliver the rough green lumber to his plant in Birmingham, Alabama. Title to the standing timber, the logs and the rough green lumber and the finished product of the planing mill at all times was, and remained, in Grayson until he sold it to the trade. So far as the record shows, the sawmill operators who cut Grayson's timber into logs and sawed it into rough green lumber and delivered it to Grayson in Birmingham paid a sawmill license under Sec. 585 of Title 51, Code of 1940, and Grayson did not at any time pertinent hereto purchase or own a sawmill license.

When the rough green lumber was delivered to Grayson's plant in Birmingham, it was green and rough, had not been trimmed, and had the rough and bark ends on it, and was not suitable in that form for the ordinary construction uses for which lumber is used.

The planing mill operated by Grayson consists of a resaw, multisaw, end trimmer, planer or matcher, molder and Canadian trimmer.

When the rough green lumber was received at Grayson's plant in Birmingham, it was run through the double end trimmer or multisaw trimmer, which trimmed the ends

square, cut off bark or bad ends, and left each end at a 90 degree angle. The lumber was then graded, sorted and stacked for the purpose of being dried. A portion was dried by air, and the remainder kiln dried. After the lumber was dried, all of it (with exception of the oak lumber sold to Merit Oak Flooring Co.) was again run through the planing mill. Some of the lumber which was two inches thick was cut by the resaw into two pieces, each one inch thick. The rough lumber was finished by being dressed or planed into smooth lumber and the ends and sides being trimmed by the planer or matcher which produced the exact finished sides which are smaller than the rough sides. The finished lumber was then ready for ordinary construction use and was then either delivered to purchasers or stored in bins on the lumber yard for future sale.

Approximately 98 per cent of the lumber sold by Grayson was finished at the planing mill from rough lumber cut from timber owned by Grayson, and the remaining 2 per cent was lumber purchased from others. Included in this 2 per cent was west coast lumber, some of which was purchased in the rough state and some in the finished state, and all of which was purchased for the purpose of putting it in stock at the lumber yard. That which was purchased in the rough state was planed and dressed into the finished product at the planing mill.

There was testimony to the effect that the process by which the standing trees were converted into rough green lumber adds approximately 40 per cent to their value, and the process by which the rough green lumber is converted into finished product at the planing mill adds approximately 60 per cent to the value of the rough green lumber.

Approximately 85 per cent of the sales made by Grayson were to consumers from his lumber yard. Five per cent were made to wholesale dealers in lumber, 10 per cent were what Grayson termed or designated as accommodation or complimentary sales made to other lumber yards or made to a manufacturer who further processed the lumber.

All of the lumber included in the 5 per cent of sales made to wholesale lumber dealers was lumber made from timber owned by Grayson and which was received at his yard in the rough green state and which had been made into the finished product at Grayson's planing mill. Of the 10 per cent sold to other lumber yards or manufacturers, 7 or 8 per cent of the 10 per cent was what Grayson designated as complimentary or accommodation sales made to other lumber yards, and the remaining 2 or 3 per cent was oak lumber sold to Merit Oak Flooring Company, which was a manufacturer and which manufactured the same into oak flooring. All of the sales of oak lumber made by Grayson to Merit Oak Flooring Company was lumber made from timber owned by Grayson which was received at his plant as rough green lumber, and after being received was trimmed in the planing mill, sorted, stacked and dried before being sold to Merit Oak Flooring Company.

All the so-called complimentary or accommodation sales of lumber to other lumber yards was lumber which had been received by Grayson at his plant in the rough state and had been finished in the planing mill with the exception of a few sales of foreign wood purchased in a finished state which was so infinitesimal in amount that they were disregarded by the trial judge and were not referred to by the state in its brief.

Grayson was not a dealer in timber and did not sell timber.

█  The difficulty in resolving a case like the one presented by the record before us lies in the fact that we are called upon to determine the legislative intent in passing the statute involved. In the first place, one may do a legitimate business in Alabama without the procurement of a business license to do so, so long as the legislature

does not see fit to require such a license. In ·the second place, it has long been the rule in this state that in construing taxing statutes which are of doubtful application, the taxpayer will be afforded the benefit of any doubt, and such statutes should be construed in favor of the taxpayer and against the state, State v. Holt, 34 Ala. App. 104, 38 So.2d 598, certiorari denied 251 Ala. 526, 38 So.2d 602; Jefferson County v. Great A & P Tea Co., 237 Ala. 103, 185 So. 766; National Linen Service Corp. v. State Tax Comm., 237 Ala. 360, 186 So. 478; Hill Grocery Co. v. State, 26 Ala. App. 302, 159 So. 269; State v. Downs, 29 Ala.App. 442, 197 So. 379.

■ Privilege tax laws should be based on a reasonable classification, and apply to all within the class. As disclosed by our statutes, the legislature has imposed a privilege tax on several classes, each of which is within what may be broadly termed the lumber industry. These statutes have been amended several times, and at present read as follows:

Sec. 546, Title 51, Code of Alabama 1940, as amended by Act No. 460, Gen.Acts of Alabama 1945, p. 693:

"§ 546. Lumber and timber dealers. —Each wholesale dealer, or jobber of lumber and timber and for each whole-sale dealer in lumber and timber on commission whether maintaining an established place of business or not, one hundred dollars. A sawmill operator, regularly licensed under section 585 of this title, shall not become liable for the license imposed by this section by reason of his purchasing partially manufactured lumber from other saw-mills, if the processing of said partially manufactured lumber is completed at the plant of the sawmill operator so purchasing the same and the lumber is thereafter shipped or sold in the same manner as lumber manufactured at the plant of such operator; provided such purchases do not exceed in volume the lumber manufactured by such operator at his own plant or plants."

Sec. 547 of Title 51, Code of Alabama 1940:

"§ 547. Lumber yards.—Each person operating a lumber yard; in cities of one hundred thousand inhabitants and over, seventy-five dollars; in cities of less than one hundred thousand and not less than thirty-five thousand inhabitants, forty dollars; in cities of less than thirty-five thousand and not less than seven thousand inhabitants, twenty-five dollars; less than seven thousand inhabitants and not less than one thousand inhabitants, ten dollars; in all other places whether incorporated or not, five dollars. This shall not apply to regularly licensed sawmills selling lumber at retail at it or his plant."

Sec. 585 of Title 51, Code of Alabama 1940, as amended by Act No. 311, Gen. Acts of Alabama 1945, p. 503, effective October 1, 1945:

"§ 585. Saw mills, heading mills or stave mills.—Each person, firm or corporation engaged in operating a saw mill, heading mill or stave mill shall pay a privilege tax according to capacity as follows: Those having a capacity of five thousand feet or less per day, ten dollars; those having a capacity of more than five thousand and not exceeding ten thousand feet per day, twenty-five dollars; those having a capacity of more than ten thousand and not exceeding twenty-five thousand feet per day, fifty dollars; those having a capacity of more than twenty-five thousand feet and not exceeding fifty thousand feet per day, one hundred dollars; those having a capacity of more than fifty thousand feet per day and not over one hundred thousand, two hundred dollars; those having a capacity of one hundred thousand and not over one hundred fifty thousand,

three hundred dollars; those having a capacity of more than one hundred fifty thousand, and not more than two hundred thousand, four hundred dollars; and those having a capacity of more than two hundred thousand feet, five hundred dollars. Provided only one state license shall be paid by the operator or owner of any saw mill."

Sec. 614, Title 51, Code of Alabama 1940:

"§ 614. Veneer mills, planing mills, box factories, etc.—Each person, firm or corporation engaged in the operation of a veneer mill, planing mill, box factory, handle factory, or any other factory where lumber or timber is sawed or made into a finished or semi-finished product, other than a saw mill licensed under section 585 of this title, shall pay a privilege tax based on the number of men employed or engaged in the manufacture of the products produced by such mills, as follows: Where there are five or less men employed or so engaged, five dollars. Where there are more than five men and less than ten so employed or engaged, ten dollars. Where there are more than ten men and less than twenty so employed or engaged, thirty dollars. Where there are more than twenty men and less than forty so employed or engaged, eighty dollars. Where there are more than forty men and over, one hundred and twenty dollars. It is the intention hereof that where a person, firm or corporation shall pay a privilege tax under section 585 or under section 546 of this title, then no privilege license shall be charged or collected hereunder."

Unquestionably, this court has always recognized and still maintains, for ordinary tax purposes, the distinction between a "manufacturer" and a "wholesaler," "dealer," "jobber," "mechanic," "merchant," "seller" and "tradesman." State v. Coastal Petroleum Corp., 240 Ala. 254, 198 So. 610, and cases there cited.

We have four cases dealing with the privilege taxes on different classes of the lumber industry: Nash v. State, 21 Ala. App. 613, 110 So. 797 (this case did not reach the Supreme Court of Alabama); State v. Downs, supra; Adams v. Curry, 243 Ala. 90, 8 So.2d 578; and State v. Holt, supra.

The Holt case, supra, being the last one of the four above-mentioned cases, analyzes and distinguishes the other three. It, in effect, criticizes some of the expressions found in the Downs case. It is to be remembered that the license schedules covering the lumber industry were amended several times after the decision in the Nash case, supra, and, as a consequence, these amendments were necessarily considered in rendering the decisions in the subsequent cases.

The state argues that Grayson cannot be a manufacturer, because under the decision in the Downs case the sawmill's operators who cut Grayson's trees and sawed them into lumber are the manufacturer, and that Grayson is merely a processor. But that argument is fallacious for the reason that the sawmill operators in the instant case neither bought nor sold any lumber. Grayson was the owner of the standing timber and continued the owner of the lumber at all times until the finished product was sold to the trade. He no doubt paid the sawmill license indirectly in the price paid to the sawmill operators for cutting and sawing his trees. Grayson, and not the sawmill operators, is the manufacturer under the facts of this case.

There is another factor that makes Grayson a manufacturer. Not only may the person who works with the original raw materials be a manufacturer, but one who uses prepared materials, or partially manufactured materials, to produce a different product, is a manufacturer. This principle

**40**

was established in our case of Beggs v. Edison Electric Illuminating Co., 96 Ala. 295, 11 So. 381, 383, where manufacturing was defined as follows:

> "The production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery."

This definition was reaffirmed in State v. Ben R. Goltsman & Co., 261 Ala. 318, 74 So.2d 414. See also State v. Chadbourn, 80 N.C. 479, 30 Am. Rep. 94.

Here, Grayson owned and operated a planing mill for which he paid a license under Section 614, supra.

When his own rough green lumber was received at his plant in Birmingham, it was run through the double end trimmer or multisaw trimmer, which trimmed the ends square and cut off bark or bad ends. It was then graded, sorted and stacked for the purpose of being dried, a portion was dried by air and the remainder kiln dried. It was then run through Grayson's planing mill and came out finished lumber ready for ordinary construction use. It was thereafter sold to the trade; it matters not whether at retail or wholesale, for Grayson was the manufacturer.

Grayson paid a lumber yard license under Sec. 547, supra, because, aside from his manufacturing business, he ran a lumber yard in the City of Birmingham.

We pretermit a discussion of the question as to whether or not Grayson actually sold a part of his output at wholesale, a debatable question, because he had a right to do so as a manufacturer.

The case is due to be, and is, affirmed.

Affirmed

LAWSON, SIMPSON and MERRILL, JJ., concur.