WRIGHT, Presiding Judge.
This is a wholesale oil dealers’ license or privilege tax case.
The undisputed facts are as follows: Deep Sea Foods, Inc. (formerly Seafood Haven, Inc.), through a division, sells diesel fuel and lubricating oil from its premises adjacent to the Bayou La Batre Bayou in Mobile County. Said fuel and lubricating oil, with one exception, is sold entirely to ships and other water-borne vessels on the Bayou La Batre Bayou.[1] Such sales are made to the ultimate consumer or user of said fuel or lubricating oil, not to persons for resale, and are generally in quantities of twenty-five gallons or more. All sales constitute “retail sales” within the meaning of the Alabama sales tax statute, § 40-23-1, Code of Alabama 1975, and, thus, unless specifically exempted therefrom by § 40-23-4 of the Code, are subject to taxation by that statute. All such sales of lubricating oil and some sales of fuel oil are so exempted. However, many sales of fuel oil are subject to sales tax, which Deep Sea Foods collects from its customers and accounts for with the State.
Zewen Marine Supply, Inc., and Fisherman Marine Products, Inc., are similarly engaged in the business of selling fuel and lubricating oil from their respective businesses in Bayou La Batre. From these premises, which are also adjacent to the Bayou La Batre Bayou, they make such sales to ships and other water-borne craft using said bayou. All such sales are made to the ultimate consumer or user of said products. At least some of these sales are in quantities of twenty-five gallons or more, and all sales, unless exempted, constitute retail sales within the meaning of § 40-23-1.
On December 7, 1981, the State of Alabama Department of Revenue (hereinafter Department) conducted an audit for wholesale oil dealers’ license tax upon Seafood Haven and, as a result thereof, filed notice and demand to pay license tax upon Deep Sea Foods for the period from October 1, 1978, through September 30, 1981. The Department also entered a preliminary and, subsequently, a final assessment of wholesale oil dealers’ license tax for the same period against said corporation in the amount of $23,942.33, said assessment being made pursuant to § 40-17-174, Code 1975, which provides in pertinent part that:
“Each person, firm, corporation or agency selling illuminating, lubricating or fuel oils at wholesale, that is to say in quantities of 25 gallons or more, shall pay to the department of revenue for the use of the state, within two weeks from the beginning of the fiscal year, the sum of one half of one percent on his gross sales for the preceding fiscal year, and such payment to the department of revenue shall be accompanied by a sworn statement verified by the person having knowledge of the facts showing the amount of the gross sales of such oils sold in the state during the preceding fiscal year.”
On April 7, 1982, Deep Sea Foods brought suit in the Circuit Court of Mobile *415 County asserting that it was not a wholesale dealer within the meaning of § 40-17-174 and that the application of said statute against it was erroneous and should be set aside.
On September 21, 1982, Zewen Marine Supply, Inc. and Fisherman Marine Products, Inc., who had filed réturns and paid taxes which the Department claimed to be due in accordance with § 40-17-174, filed a complaint in Mobile County Circuit Court seeking a declaratory judgment that they too were not subject to the provisions of that statute. On January 18, 1983, their suit was consolidated for trial with that previously brought by Deep Sea Foods.
The consolidated action was heard ore tenus on September 8,1983, and on November 15, 1983, a final decree setting aside the final assessment against Deep Sea Foods was rendered, along with a declaratory judgment in favor of Zewen Marine Supply and Fisherman Marine Products. From these rulings the Department appeals, asserting that the trial court erred in finding none of the taxpayers to be wholesalers within the meaning of § 40-17-174.
The sole issue before us is one of statutory construction; in particular, whether one should be considered as selling illuminating, lubricating or fuel oils “at wholesale” within the meaning of § 40-17-174 simply because he sells such oils in quantities of twenty-five gallons or more.
The Department contends that in enacting § 40-17-174, the Alabama legislature manifests its clear intent that, for the purposes of this section, anyone who sells the enumerated oils in the enumerated quantities should be considered a seller “at wholesale” subject to § 40-17-174, regardless of whether such sales are made to the ultimate consumer or to a distributor for resale. The Department asserts that the trial court ignored this definition and erroneously adopted the definition of “wholesale” from the Alabama Sales Tax Law in reaching its decision.
The taxpayers, on the other hand, contend that “at wholesale” has an independent meaning apart from the twenty-five-gallon provision. That meaning, which they assert is derived from common everyday usage of such phrase, is as follows:
“wholesale (noun): the sale of commodities in quantity usually for resale (as by a retail merchant).
“wholesale (adjective): of, relating to, or engaged in the sale of commodities in quantity for resale.”[2]
They argue that rather than applying to anyone engaged in selling the enumerated oils in quantities of twenty-five gallons or more, § 40-17-174 applies only to those selling such oils in such quantities to another (usually a merchant, industrial or commercial user) for resale. Because none of the taxpayers sell the enumerated oils for resale, they contend that § 40-17-174 does not apply to them.
The taxpayers cite State v. Coastal Petroleum Corp., 240 Ala. 254, 198 So. 610 (1940) for the proposition that the phrase “at wholesale” has independent meaning and argue that a contrary holding by this court would be inconsistent with that decision. Although the trial court apparently accepted this argument, we cannot. We believe the aforecited case to be distinguishable on its facts from the present appeal. In State v. Coastal Petroleum Corp., supra, the taxpayer operated a refinery only and did not maintain a place of business separate and apart from its refinery where any of its products were sold at wholesale, that is to say, in quantities of twenty-five gallons or more. State v. Coastal Petroleum Corp., supra 240 Ala. at 257, 198 So. 610. Thus, it was held that the taxpayer was a manufacturer to whom § 40-17-174 did not apply. State v. Coastal Petroleum Corp., supra. While the aforecited decision did provide, in dicta, that a manufacturer may also be a wholesaler within the meaning of said statute, if, in addition to manufacturing, he offers his product for sale as a “merchant ... wholesaler ...,” the decision went no further in *416 defining said term. Therefore, we narrowly interpret State v. Coastal Petroleum Corp., supra, as relieving only manufacturers from the tax imposed by § 40-17-174, and we see no support for the taxpayer’s contention that the holding thereof gives independent meaning to the term “at wholesale.” Because the present taxpayers are engaged in distribution and not manufacturing, State v. Coastal Petroleum Corp., supra, is not controlling in the present appeal, and we must look to subsequent case law for further definition of the term in question.
Such definition is provided by State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843 (1951). In that case the Alabama Supreme Court rejected an argument identical to that of the present taxpayers, that, “[T]he true distinction between ‘wholesale’ and ‘retail’ rests upon a consideration of whether or not the goods are purchased [from the taxpayer] for resale or for direct consumption.” Instead, the court held, “[T]he primary consideration [in determining whether the enumerated oils are sold at wholesale or retail] is whether the purchases [from the taxpayer] are in large or small quantities.” State v. Pure Oil Co., supra, 256 Ala. at 539, 55 So.2d 843. For the purposes of § 40-17-174, the court concluded, the legislature has simply set the dividing line between large and small (quantities) at twenty-five gallons. State v. Pure Oil Co., supra. Following this decision, we reject the present taxpayers’ contention that the applicability of § 40-17-174 depends upon the purpose of the sale; to-wit: whether made to the ultimate consumer or to another for resale. This is not a sales tax, but is a privilege or license tax upon the doing of such business. The clear intent of the statute, as best supported by its language, “at wholesale, that is to say in quantities of 25 gallons or more,” is to require all those selling the enumerated oils in the enumerated quantities to pay the tax.
We concede that on rehearing the supreme court in State v. Pure Oil Co., supra 256 Ala. at 540, 55 So.2d 843, said that not every small filling station operator who sometimes sells more than twenty-five gallons of the enumerated oil in one lot is to be taxed by § 40-17-174, that such businesses operate under the sales tax, purchase at wholesale for resale to customers who are taxed, collect tax from those customers and account therefor to the State. However, these taxpayers are not small filling station operators selling motor fuels defined by statute. § 40-17-140(4). The record clearly reveals that distributors selling fuels chemically identical to those covered by § 40-17-174 for use in motor vehicles, as defined by § 40-17-140 of the Code are not subject to § 40-17-174. Such fuels are considered “motor fuels,” as defined by § 40-17-140, rather than “fuel oils” within the meaning of § 40-17-174, and are subject to excise tax under § 40-17-141 of the Code. Because, as the record indicates, only one of the taxpayers was engaged in selling “motor fuels” and regularly paid the taxes thereon without dispute, the supreme court’s analogy has no bearing here.
It may be argued that this analogy indicates that the applicability of § 40-17-174 is one of degree and that said statute should not be applied to small distributors who occasionally sell the enumerated oils in quantities of twenty-five gallons or more. However, there is no doubt that the statute applies to those who, though occasionally selling such oils in lots of less than twenty-five gallons, primarily make sales far exceeding said amount. The present taxpayers thus fall squarely within the statute.
The record indicates that for the years 1980 through 1982, Zewen Marine Supply paid taxes pursuant to § 40-17-174 of approximately $6,700, $8,100 and $10,000 respectively. These figures indicate gross sales of the enumerated oils for those years of $1,340,000, $1,620,000 and $2,000,-000.[3] Although some sales were made to pleasure boats, sales were primarily to commercial fishing vessels whose fuel ca *417 pacity, of which we take judicial notice, is greatly in excess of twenty-five gallons.[4] While specific sales figures for Fisherman Marine were not presented to the court, there was an offer of proof stipulating that their sales of the enumerated oils were similar in quantity and were made primarily to commercial fishing boats.
Similarly, the record shows that for the two-year period from October 1, 1978, through September 30, 1980, Deep Sea Foods was assessed wholesale dealers’ taxes, pursuant to § 40-17-174, of $6,957.61 and $9,366.10, respectively, indicating gross sales of the enumerated oils for that period of $1,391,522 and $1,873,220. Again the testimony reveals that such sales were generally in quantities exceeding twenty-five gallons.
In view of these facts, we find that taxpayers were regularly and routinely engaged in sales of the lubricating and fuel oils in quantities of twenty-five gallons or more, and, thus, are wholesalers within the meaning of § 40-17-174. Therefore, we find that they are liable for the wholesale oil dealers’ privilege or license tax assessed against them. The Mobile County Circuit Court’s holding to the contrary was in error.
REVERSED AND REMANDED.
BRADLEY, J., concurs.
HOLMES, J., concurs specially.

. A small portion of the fuel is used by Deep Sea Foods in its own trucks and automobiles. In such cases, the appropriate on-road motor fuel taxes are paid and were not included as part of the final assessment.

. Webster’s New Collegiate Dictionary (1977).

. The amount of taxes assessed represents one-half of one percent of gross sales.

. The record indicates that many sales to commercial fishing boats were exempted from sales tax by § 40-23-4, Code of Alabama 1975.